EXHIBIT A

| | |
|---|---|
| **DISTRICT COURT, GARFIELD COUNTY, STATE OF COLORADO**<br>109 8th Street<br>Glenwood Springs, Colorado 81601 | DATE FILED: July 28, 2020 3:54 PM<br>FILING ID: 9CC7DAE5CAEBD<br>CASE NUMBER: 2020CV30095 |
| **SHAWN SIGSTEDT,**<br><br> Plaintiff,<br><br>v.<br><br>**COLORADO MOUNTAIN LOCAL COLLEGE DISTRICT; COLORADO MOUNTAIN LOCAL COLLEGE DISTRICT BOARD OF TRUSTEES; CARRIE HAUSER, as an individual and in her official capacity as President of Colorado Mountain College; MATT GIANNESCHI, as an individual and in his official capacity as Chief Operating Officer and Chief of Staff of Colorado Mountain College; DAVID GIFFORD, as an individual and in his official capacity as Dean of Colorado Mountain College's School of Science, Technology, Engineering, and Math,**<br><br> Defendants. | **▲ COURT USE ONLY ▲** |
| **Attorney for Plaintiff:**<br>Erik G. Bradberry, #49894<br>Colorado Education Association<br>1500 Grant Street<br>Denver, Colorado  80203<br>Phone:  (303) 837-1500<br>Fax:  (303) 861-2039<br>email: ebradberry@coloradoea.org | Case Number:<br><br>Division: |
| **COMPLAINT AND JURY TRIAL DEMAND** | |

The Plaintiff, Shawn Sigstedt, by and through counsel, hereby submits the following

Complaint and Jury Trial Demand against the Defendants, Colorado Mountain Local College

District ("the College" or "CMC'); Colorado Mountain Local College District Board of Trustees ("Board"); Carrie Hauser; Matt Gianneschi; and David Gifford:

## I.     NATURE OF THE ACTION

1.     The College employed Shawn Sigstedt as a biology professor at its campus in Steamboat Springs, Colorado.  Professor Sigstedt's employment was governed by an individual employment contract, as well as by a series of College policies that gave rise to additional contractual obligations between the parties.  The Defendants breached those contractual obligations when, for example, they notified Professor Sigstedt of their intent to non-renew (i.e. terminate) his employment more than two months after the deadline for doing so.  When Professor Sigstedt objected to his non-renewal and requested a hearing before an impartial review panel, the Defendants went through the motions of affording adequate due process, but fell well short by, for example, failing to give Professor Sigstedt a meaningful opportunity to be heard, and by eliminating both the appearance and fact of impartiality on the part of the review panel.  In any event, the Defendants lacked jurisdiction to terminate Professor Sigstedt's employment at the time and in the manner they did.  For these reasons, Professor Sigstedt presents claims for (a) breach of contract; (b) deprivation of due process; (c) violation of statute; and (d) review pursuant to C.R.C.P. 106(a)(4).

## II.     JURISDICTION AND VENUE

2.     The District Court of Garfield County State of Colorado, has jurisdiction of this action pursuant to Article VI, Section 9, of the Colorado Constitution.

3.     Venue is proper in this District pursuant to Rule 98 of the Colorado Rules of Civil Procedure.

### III.    ADMINISTRATIVE PROCESS AND JURISDICTIONAL PREREQUISITES

4.      On May 19, 2020, the College informed Sigstedt of its intent to terminate his employment by non-renewing his contract.  In its letter, the College notified Sigstedt of his right to request an appeal.

5.      Sigstedt filed a timely appeal, and the parties selected a panel from the College's Peer Review Committee to conduct a hearing.

6.      The College made a unilateral change to the composition of the review panel, after which the newly constituted panel scheduled a hearing.

7.      The hearing took place on June 22, 2020, and lasted a little over one hour.  During the hearing, Sigstedt stated a number of objections, discussed further below.

8.      On June 29, 2020, the review panel recommended that the College non-renew Sigstedt's employment.

9.      The next day, June 30, 2020, College President Dr. Carrie Hauser upheld the panel's recommendation.  Because the panel and president agreed on the outcome, College Policy did not allow Sigstedt to appeal to the Board of Trustees.

10.      To the extent he was required to do so, on July 21, 2020 Sigstedt submitted to the College a notice pursuant to the Colorado Governmental Immunity Act ("CGIA"), § 24-10-109, C.R.S. The notice complied in form and within the time restrictions set forth in §§ 24-10-109 and 118(1)(a), C.R.S.

11.      All administrative and jurisdictional prerequisites to initiating this action have been met.

### IV.    PARTIES

12.      The Plaintiff, Shawn Sigstedt, is a biology professor formerly employed by the College. At all times relevant hereto, Sigstedt has resided in Steamboat Springs, Routt County, Colorado.

13.     Defendant Colorado Mountain College is a public local district college organized and existing under applicable Colorado Law.  The full legal name of the College is "Colorado Mountain Local College District" (C.R.S. § 23-71-120). The College may also be referred to as "Colorado Mountain College," "CMC," "the College," or "the District."  The College is legally authorized to hold property in its name, and to be a party to suits and contracts, like other municipal corporations in this state.  The College is a "person" for purposes of 42 U.S.C. § 1983. The College's headquarters are located in Glenwood Springs, Garfield County, Colorado.

14.     Defendant Colorado Mountain College Board of Trustees is the College's governing body.  The Board has the authority, responsibility, rights, privileges, powers, and duties granted by Colorado statute and customarily exercised by governing boards of institutions of higher education. The Board is ultimately responsible for the governance of the College and for carrying out the duties and powers set forth by applicable Colorado law.  The Board may delegate power and duties to the College's president, but only to the extent permitted by law. The Board's headquarters are located in Glenwood Springs, Garfield County, Colorado.

15.     Defendant Carrie Hauser, Ph.D. is the President of Colorado Mountain College. President Hauser's office is located in Glenwood Springs, Garfield County, Colorado.  At this time, President Hauser's place of residence is unknown.

16.     Defendant Matt Gianneschi, Ph.D., is the College's Chief Operating Officer and Chief of Staff.  Gianneschi's office is located in Glenwood Springs, Garfield County, Colorado.  On information and belief, Gianneschi resides in Garfield County, Colorado.

17.     Defendant David Gifford is a Dean in the College's School of Science, Technology, Engineering, and Mathematics.  Gifford's office is located in Glenwood Springs, Garfield County, Colorado.  On information and belief, Gifford resides in Eagle County, Colorado.

## V.    FACTUAL ALLEGATIONS

18.     The allegations set forth in paragraphs 1 through 17 of this Complaint and Jury Demand are hereby incorporated by reference.

### *The Applicable Policies and Procedures*

19.     The College is governed by a series of policies adopted by the Board and procedures promulgated by its President.  During the term of his employment, Sigstedt considered the policies and procedures in issue here commitments by the College that it would adhere to the letter and spirit of their provisions.

20.     In March 2015, the Board adopted Policy 6.26, "Grievance for Faculty Terminations", which remained in effect at all times relevant here.  Attachment. 1.  The Policy applies to full-time regular—as opposed to provisional, part-time, or grant-funded—faculty members.

21.     Among other job protections for regular, full-time faculty members ("Faculty Members"), Policy 6.26 limits the grounds upon which the College may terminate their employment.  For example, the Policy authorizes the College to dismiss a Faculty Member for, *inter alia*, insubordination, neglect of duty, or other good and just cause.  Similarly, the College may decide to non-renew—and thereby terminate—a Faculty Member's employment on the grounds of incompetence or when there is a justifiable lack of work related to the discontinuance of a program area.  By virtue of these limits on the College's authority to terminate Sigstedt's employment, Sigstedt possessed a property interest in continued employment.

22.     In cases of non-renewal, Policy 6.26 requires the College to give the Faculty Member notice at least 60 days before the end of their existing contract term.  The notice must state the reason(s) for non-renewal, and it must also inform the Faculty Member of his appeal rights.

23.     If a Faculty Member appeals the College's non-renewal decision, the matter is reviewed by a panel of the College's Peer Review Committee.  College Procedure 6-I defines the process, including how the parties are to select the review panel from the entire Committee.  Attachment 2.  The selection process begins with the College President striking four names from the list of Peer Review Committee members.  She then sends the list of Panel members to the Faculty Member, who also strikes four names.  According to Procedure 6-I, the remaining five Review Committee members "shall constitute" the panel ("Review Panel" or "Panel") that hears the Faculty Member's appeal.

24.     Procedure 6-I charges the College President with notifying the Review Panel members they have been selected and with designating one member as responsible for convening a meeting so the Panel can select a chairperson.  The Review Panel must convene a hearing within ten days of receiving notice of their selection from the College President.  No College policy or procedure designates a minimum or maximum amount of time to set aside for the hearing.

25.     Procedure 6-I, however, mandates that the hearing—whatever its duration—focus "on the issues presented by the parties."

26.     Within five days after the hearing ends, the Review Panel is to notify the College and the Faculty member of its recommendation—i.e. whether the Faculty Member should be non-renewed or not.

27.     The College President then has five business days to consider the Review Panel's recommendation and render a decision.  If the President "substantially agrees" with the Review Panel's recommendation, her decision is "final."  If there is discord between the Panel and the President, then—and only then—is the Faculty Member permitted to appeal to the Board.

### Sigstedt's Employment with the College

28.     Sigstedt has a decades-long record of teaching biology and related subjects, including at Harvard University and Regis University.  In or about 2007, the College hired Sigstedt to teach biology at its Alpine Campus, in Steamboat Springs, Colorado.

29.     After successfully completing a provisional period, Sigstedt became a regular faculty member.  At all times relevant hereto, Sigstedt enjoyed all the job protections of a regular, full-time faculty member, including those set forth in Policy 6.26 (Attachment 1) and Procedure 6-I (Attachment 2).

30.     Sigstedt successfully performed the duties of a full-time biology professor.  He received positive reviews from an overwhelming majority of his students, and on several occasions earned merit-based bonuses for his contributions to the College.

31.     During the 2019-2020 academic year, as every year, Sigstedt worked under an individual employment contract.  *See* Attachment 3.  That contract fixed the term of Sigstedt's 2019-2020 employment as August 19, 2019 through May 8, 2020.  *Id.*  In exchange for his services, the College paid Sigstedt a salary of $93,857.40.  With benefits, the College provided Sigstedt $125,198.27 in direct compensation, and another $6,073.13 in indirect leave benefits.

32.     The 2019-2020 year was anything but typical for Sigstedt.  In or about November 2019, Sigstedt took an approved leave of absence to care for his ailing father.  In early 2020, after his father passed away, Sigstedt took a short bereavement leave.  Shortly after that, the COVID-19 pandemic brought about dramatic change—and disruption—to the College's (and Sigstedt's) normal operations.

33.     Notwithstanding these challenges, on March 18, 2020, College President Hauser notified Sigstedt by letter that he had earned a merit payment, which she described as "a demonstration of

appreciation for your effort in 2019.  But, I also like to reinforce that it is also a down payment on the incredible things you will do to help CMC thrive through and beyond the adversities we currently face." Attachment 4.

34.     Two months later, however, Defendant Gianneschi informed Sigstedt of the College's decision to non-renew his employment on the ground of "incompetence."  Attachment 5.  In his letter, Gianneschi cited the basis of the College's decision as a determination by Defendant Gifford that Sigstedt had supposedly failed to meet certain goals set forth in an "improvement plan" Gifford issued to Sigstedt in July 2019.

35.     Gifford did not intend for his "improvement plan" to bring about professional growth in Sigstedt.  Rather, he, Gianneschi, and perhaps other College employees meant for it to be the vehicle by which they would attempt to legitimize their efforts to deprive Sigstedt of his property interest in continued employment.

36.     Gianneschi's May 19, 2020 letter (Attachment 5) informing Sigstedt of his non-renewal came eleven days after the end of Sigstedt's 2019-2020 contract term (see Attachment 3), and 71 days after March 9, 2020—i.e. the College's deadline to notify Sigstedt of non-renewal in accordance with Policy 6.26 (Attachment 1).

37.     Gianneschi's May 19, 2020 letter informed Sigstedt he could appeal the College's decision to non-renew his employment, but misinformed him as to the nature of the appeal hearing.  According to Gianneschi, review would be limited to "the facts resulting in the non-renewal decision only."  Attachment 5.  Procedure 6-I, meanwhile, provided that review was to be "on the issues presented by the parties."  Attachment 2.

38.     Sigstedt submitted a timely appeal.  After that, within the timeframes set by Procedure 6-I, the College President and Sigstedt each struck four names from the list of Peer Review

Committee members.  However, the five remaining members did not, ultimately, constitute the Review Panel; instead, the College President unilaterally struck an additional name, citing an unspecified conflict of interest by one of the remaining members.

39.     The Review Panel's chairperson scheduled a one-hour hearing to commence on June 22, 2020.  During the hearing, Sigstedt requested, *inter alia*:

    A.     a continuance to allow additional time to prepare and to review the approximately 140 pages of documents the College submitted to support its non-renewal decision just days before the hearing;

    B.     that he permitted to present testimony by witnesses who could supply the Review Panel with evidence to rebut the College's assertion of his incompetence; and

    C.     that the College be required to present witnesses of his own so that he could confront them in order to challenge their opinions and evidence regarding his competence.

40.     The Review Panel denied, or simply refused to address in any meaningful way, each of Sigstedt's requests.

41.     Also during the hearing, Sigstedt pointed out a defect calling into question the Panel's authority to review the matter in the first place—i.e. that the College had informed him 71 days too late to affect a non-renewal of his employment for the 2020-2021 academic year.  One panel member asked Gianneschi to explain why he had been so late in providing notice, and after receiving his brief explanation, the Panel was apparently satisfied and allowed the matter to proceed.

42.     After a little over an hour, the hearing was far from completion.  Sigstedt told the Panel that he wanted an opportunity to address the documents submitted to the Panel by the College, and to show how many of those documents actually demonstrated that he was a perfectly

competent professor.  To that end, Sigstedt repeated his earlier request that the Panel reconvene later to continue the hearing.

43.     The Review Panel's chairperson indicated the Panel would consider reconvening the hearing, but did not give a definitive answer to Sigstedt's request.

44.     The Panel's answer became clear, however, on June 29, 2020, when it issued its advisory decision regarding Sigstedt's non-renewal.  Attachment 6.  In its decision, the Review Panel failed to explain why it had jurisdiction to consider Sigstedt's non-renewal despite the College initiating the process 71 days after its contractual deadline, and it similarly failed to explain why it denied Sigstedt's request to reconvene the hearing such that he might have a meaningful opportunity to address the charge against him.

45.     The next day, June 30, 2020, College President Hauser issued her decision, "substantially agreeing" with the Review Panel.  Pursuant to Procedure 6-I, adopted by President Hauser in 2016, her decision became "final"—i.e. Sigstedt had no opportunity to appeal to the Board.

## VI.     LEGAL CLAIMS

### FIRST CLAIM FOR RELIEF
### Breach of Contract – Violation of Personnel Policies
### (Against College and Board of Trustees)

46.     The allegations set forth in paragraphs 1 through 45 of this Complaint and Jury Demand are hereby incorporated by reference.

47.     Sigstedt and the College entered into a bilateral employment contract for the 2019-2020 academic year.  Among other terms, the contract incorporated by reference all of the Policies adopted by the Board of Trustees, as well as the implementing Procedures authorized by the College President.  Consequently, each of those Policies and Procedures are binding and enforceable contract terms.

10

48.     Even if the Policies and Procedures were not binding provisions of the employment contract between Sigstedt and the College, they would represent binding unilateral contracts.  In promulgating its Policies and authorizing the President to implement Procedures, the Board manifested an intent to enter into unilateral contractual relationships with its employees, including Sigstedt.  Sigstedt accepted the Board's offer, as evidenced by his agreement to continue working for the College after the pertinent Policies and Procedures were adopted.

49.     The College and its Board had a duty to adhere to Policy 6.26 in non-renewing Sigstedt's employment.

50.     The College and its Board breached that duty when they violated Policy 6.26 by failing to notify Sigstedt of his non-renewal at least 60 days before the end of his contract term.

51.     Sigstedt suffered damages as a result of the Defendants' breach—e.g., loss of employment for the 2020-2021 academic year, with an accompanying loss of salary and benefits of employment.

**SECOND CLAIM FOR RELIEF**
**Deprivation of Due Process in Violation of U.S. Const. amend. XIV, § 1**
**(Against all Defendants)**

52.     The allegations set forth in paragraphs 1 through 51 of this Complaint and Jury Demand are hereby incorporated by reference.

53.     Each Defendant constitutes a "person" within the meaning of that term as used in 42 U.S.C. § 1983.

54.     At all times relevant to this case, each Defendant acted "under color of state law" within the meaning of that term as used in 42 U.S.C. § 1983.

55.     The Defendant Board of Trustees delegated to its President the authority to promulgate procedures for the dismissal and non-renewal of regular, full-time faculty members.  Decisions the President makes pursuant to this delegated authority are, in effect, decisions by the Board.

56.     President Hauser promulgated Procedure 6-I, "Grievance for Faculty Terminations Policy – Peer Review Committee Procedure."  Pursuant to that Procedure, the President authorized a Peer Review Panel to conduct hearings and make recommendations concerning, *inter alia*, non-renewal of regular faculty members.

57.     Pursuant to Procedure 6-I, which represented an official policy of the College, the Defendants deprived Sigstedt of his protected property interest in continued employment. Specifically, the Defendants denied Sigstedt of a meaningful opportunity to be heard by, for example, limiting the time of the hearing to approximately one hour; denying him the opportunity to call witnesses, and denying him the opportunity to confront adverse witnesses.

58.     In addition, the Defendants failed to separate the functions of prosecutor and decision-maker.  Gianneschi and Gifford served as representatives for the College administration seeking to non-renew Sigstedt's employment while at the same time advising the Peer Review Panel about matters of substance and procedure, removing both the appearance and the fact of impartiality by the Panel.

59.     Raising further doubt about the impartiality of the Review Panel, counsel for the College contacted counsel for Sigstedt on June 19, 2020, insinuating that the Panel was represented by counsel for the College and that counsel would be "informing" (ex parte) the Panel to disregard the legal arguments and objections lodged by Sigstedt prior to the Review Panel's hearing. Attachment 7.

60.     President Hauser agreed with the deliberate decisions by the Peer Review Panel, Gianneschi, Gifford, and perhaps others to engage in the due process violations described above when she finalized Sigstedt's non-renewal.

61.     The Defendants' actions violate the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

### THIRD CLAIM FOR RELIEF
### Violation of Statute - § 23-71-123, C.R.S.

62.     The allegations set forth in paragraphs 1 through 61 of this Complaint and Jury Demand are hereby incorporated by reference.

63.     The Board of Trustees is the College's governing body and is ultimately responsible for carrying out the powers and duties as set forth in the Local District College Organization Act, including the specific powers set forth in C.R.S. § 23-71-122 and the duties set forth in C.R.S. § 23-71-123.

64.     Among the Board's duties is to determine the educational policies of the College.  The law requires the Board to do so by, *inter alia*, selecting personnel for the administration, operation, and maintenance of the institution.

65.     The Board failed to fulfill its duty to determine the educational policy of the College in this case by unlawfully delegating to the College President authority to non-renew (i.e. terminate) Sigstedt's employment.

66.     The Board's duty to determine the educational policy of the College by, in this case, deciding whether Sigstedt would remain employed as a professor, was non-delegable. Consequently, the President's decision to non-renew Sigsted's employment without any involvement by the Board was *ultra vires*.

## FOURTH CLAIM FOR RELIEF
### Review Pursuant to C.R.C.P. 106(a)(4)

67.     The allegations set forth in paragraphs 1 through 66 of this Complaint and Jury Demand are hereby incorporated by reference.

68.     To the extent that Sigstedt has no plain, speedy and adequate remedy otherwise provided by law, he submits this action as one for review pursuant to C.R.C.P. 106(a)(4).

69.     In non-renewing Sigstedt's employment in the manner described above, the Defendants exercised a quasi-judicial function.

70.     The Defendants exceeded their jurisdiction because the College was without authority to non-renew Sigstedt's employment after March 9, 2020—i.e. 60 days before the term of his 2019-2020 employment contract ended.

71.     The College President abused her discretion in non-renewing Sigstedt's employment because only the Board of Trustees was authorized to do so.

### RELIEF REQUESTED

**WHEREFORE**, the Plaintiff respectfully requests the Court to enter judgment in his favor and against the Defendants, and award him all relief as allowed by law and equity, including, but not limited to, the following:

      a.     Actual economic damages, in amounts to be determined at trial;

      b.     Compensatory damages, including but not limited to those for past and future pecuniary and non-pecuniary losses, emotional distress, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

      c.     Punitive damages against individual Defendants or as permitted by law;

d.    Attorney fees and costs of this action, including expert witness fees, as appropriate;

e.    Appropriate equitable relief, including but not limited to declaratory and injunctive remedies including an order reinstating Sigstedt's employment with the College; and

f.    Such other and further relief as justice requires or the law permits.

**PLAINTFF HEREBY DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

DATED this 28th day of July 2020.

Respectfully submitted,

/s/ Erik G. Bradberry
Erik G. Bradberry, #49894
Colorado Education Association
1500 Grant Street
Denver, CO 80203
(303) 837-1500
ebradberry@coloradoea.org

**Plaintiff's Address:**
Shawn Sigstedt
33300 County Road 24
Steamboat Springs, CO 80487

| **Title:** Grievance for Faculty Terminations | **Number:** 6.26 | Page **1** of **4** |
|---|---|---|
| | **Related Procedure?** ☒ Yes ☐ No | |
| **Legal Citation (if Applicable)** | **Board Approval/Revision:** 9 March 2015 | |

DATE FILED: July 28, 2020 3:54 PM
FILING ID: 9CC7DAE5CAEBD
CASE NUMBER: 2020CV30095

**Policy Statement**

It is the purpose of this policy to:

 Promote faculty excellence within the College;

1. Protect academic freedom and intellectual inquiry;
2. Recognize the responsibility of the College President to provide leadership and sound fiscal management of the College; and
3. Provide a fair and orderly process for the involuntary termination of employment of faculty members at the College.

**Scope**

This policy applies to all full-time regular faculty members ("Faculty Member") and does not apply to adjunct faculty, provisional faculty or grant funded faculty.

**Definitions**

"Academic Freedom" is the absence of constraint or coercion of choosing what one will teach (within the constraints of official course descriptions and official course syllabi), investigate, study or present in all fields of learning.

"Competence" is the proven ability to sufficiently perform all duties as identified in College policy and/or job description.  Competence shall include but not be limited to the following evidence:

a. Teaching quality as indicated by a preponderance of formal and documented evidence regarding the faculty member's ability to perform professional teaching responsibilities. Such evidence may include student evaluations over the most recent 24 months and also all Performance Evaluations directed by the college and performed in the last 48 months.

b. Evidence of scholarly or other professional activity as appropriate to the Faculty Member's program area; and

c. Service to the College beyond assigned teaching duties.

"Dismissal" is the involuntary termination of employment during the term or upon the expiration of the contract for reasons other than reduction in force.

"Insubordination" is the failure to comply with reasonable instructions relevant to one's professional position, which have been provided by a supervisor acting within the scope of his/her authority.

"Non-renewal" is the failure or refusal to offer to an employee a new contract of employment for the subsequent year.

| Title: Grievance for Faculty Terminations | Number: 6.26 | Page **2** of **4** |
|---|---|---|
| | Related Procedure? ☒ Yes ☐ No | |
| Legal Citation (if Applicable) | Board Approval/Revision: 9 March 2015 | |

"Performance Evaluation" is the regular formal process used to review and record a faculty member's performance of his/her assigned duties.

**Reassignment**
The President may, at her or his discretion, reassign any Faculty Member by changing the job title, job description and/or assignment.  If the reassignment occurs during the term of an employment contract, there will be no reduction in compensation during such contract term as a result of the reassignment. The President's decision is final and is not subject to review.

**Provisional Faculty**
Provisional Period: Provisional Faculty Members are those employees holding a full time faculty contract during a provisional period from the date of employment until the completion of employment under two consecutive full year regular contracts. In general, the provisional period is twenty-four months after the date of hire.  Provisional faculty shall not receive regular status until after completing not less than 24-months of continuous service to the college and successfully completing two regular contracts. The President may determine that additional time beyond the standard 24-month period is required for certain faculty and the President may extend the provisional period for no more than 12 additional months.

**Non-renewal**
Grounds
A provisional faculty member's contract may be allowed to expire and not renewed for any reason at the end of any contract term during the provisional period.  A regular Faculty Member's contract may be allowed to expire and may not be renewed for failing to demonstrate Competence at any time during the preceding two years, justifiable lack of work related to the discontinuance of a program area, or for other justifiable academic reason as determined by the college President.  The college President shall make reasonable efforts to reassign Faculty Members facing non-renewal as a result of grounds other than Competence.

Notice
Notice of Non-renewal shall be given by the President or his or her designee no later than sixty days preceding the end of the contract term.  The effective date shall be no sooner than the end of the then current contract date.  The notice of Non-renewal must state the reasons and inform the Faculty Member of appeal rights.

Appeal
Within ten (10) calendar days of service of the notice of nonrenewal, a Faculty Member who has received a notice of Non-renewal may request consideration by a Peer Review Committee as provided by College procedure. There shall be no review of nonrenewal of a provisional faculty member's contract.

| Title: Grievance for Faculty Terminations | Number: 6.26 | | Page **3** of **4** |
|---|---|---|---|
| | Related Procedure? | ☒ Yes | ☐ No |
| Legal Citation (if Applicable) | Board Approval/Revision:<br>9 March 2015 | | |

**Dismissal, Suspension without Pay or Other Disciplinary Action for Cause**

Grounds

The following shall constitute grounds for dismissal, suspension, and other disciplinary action:

1. Insubordination;
2. Neglect of duty;
3. Conviction of a felony or acceptance of a guilty plea or a plea of nolo contendere to a felony;
4. Immorality that relates to one's role as a faculty member;
5. Incompetence after notice and opportunity to improve;
6. Mental or physical disability which, even with reasonable accommodation, substantially interferes with the person's ability to perform the essential functions of the job in question. Termination under this ground shall be in compliance with Federal law which prohibits discrimination against persons with disabilities;
7. Failure to fulfill provisions of employment contract; or
8. Other good and just cause as determined by failure to meet reasonable written and published standards.

Notice

Notice of dismissal, suspension, or other disciplinary action may be given by the President or his or her designee at any time and shall state the grounds and effective date. The notice must state the reasons and inform the Faculty Member of appeal rights.

Review

A Faculty Member who is given notice of dismissal or suspension without pay in excess of fifteen business days shall, within ten (10) calendar days of service of notice review, have the right to request peer review as provided by College procedures established in connection with this Policy. A Faculty Member who is suspended without pay for more than fifteen work days shall have the opportunity to petition such actions pursuant to the college's grievance policy and procedure. All documentation concerning disciplinary actions shall be placed in the Faculty Member's personnel file.

Suspension with Pay

The President or his or her designee may suspend a regular or provisional Faculty Member without cessation of salary and benefits for such term as the President or his or her designee determines to be in the best interest of the College upon a finding that there is good cause to believe, that:

1. The continued presence on the grounds of the College would endanger the safety or well-being of the Faculty Member or other members of the College; or

2. The continued functioning of the Faculty Member in his/her position would substantially disrupt the normal functions of the College.

| **Title:** Grievance for Faculty Terminations | **Number:** 6.26 | Page **4** of **4** |
|---|---|---|
| | **Related Procedure?** ☒ Yes ☐ No | |
| **Legal Citation (if Applicable)** | **Board Approval/Revision:** 9 March 2015 | |

**Revisions**

No revisions of this policy shall be adopted except after consultation with the Faculty Senate and approval by the Board of Trustees.

**Procedures**

In consultation with the Faculty Senate, the College President shall promulgate procedures as necessary to implement this policy. The Faculty Senate must affirm such procedures prior to their implementation.

EXHIBIT 2

| Title: Grievance for Faculty Terminations Policy – Peer Review Committee Procedure | Procedure Number: 6-I | Page **1** of **2** |
|---|---|---|
| **Board Policy or Policies:** Policy 6.26 – Grievance for Faculty Terminations | **Adopted by: Carrie Besnette Hauser, President** <br> **Date of Last Revision**: December 12, 2016 | |

DATE FILED: July 28, 2020 3:54 PM
FILING ID: 9CC7DAE5CAEBD
CASE NUMBER: 2020CV30095

**Application.** When an eligible faculty member requests a review in accordance with the College's Grievance for Faculty Terminations Policy, this procedure applies. Applications for appeal are limited to the grounds for dismissal and non-renewal appearing in the Grievance for Faculty Terminations Policy. Material that is unrelated to the grounds for dismissal and non-renewal appearing in the Grievance for Faculty Terminations Policy shall not be considered by the Peer Review Committee.

**Peer Review Panel.** The Faculty Senate shall elect a College-wide hearing panel of thirteen members in September of every even numbered year and notify the President of the members so elected. The purpose of the Peer Review Panel is to review the evidence provided by the Faculty Member and the College and provide a recommendation to the President concerning the accuracy, correctness, and relevance of evidence used by the College to satisfy the grounds for dismissal or the grounds for non-renewal as they appear in the Grievance for Faculty Terminations policy.

**Peer Review Committee Process.** If there is a request for a hearing in accordance with the Grievance for Faculty Terminations Policy, the following steps shall be taken:

1. <u>Selection of Peer Review Committee.</u> If the Faculty Member submits his/her request for review by a Peer Review Committee in a timely manner as provided for by the Grievance for Faculty Terminations Policy then, within three business days, the President shall strike four names from the list of panel members and send the list to the Faculty Member. Upon receipt of the list, the Faculty Member shall strike four names from the remaining panel members on the list and return it to the President within three business days. If for any reason the Faculty Member fails to strike any names or less than four names within the required period, the President shall strike a sufficient number to reduce the members to five. The five panel members whose names remain on the list shall constitute the Peer Review Committee.

2. <u>Notification to Peer Review Committee.</u> The President shall notify the members on the Peer Review Committee in writing that they have been selected to constitute the committee and shall designate one member to convene a meeting to select a chairperson.

3. <u>Peer Review Hearing.</u> The chairperson shall give written notice (may be electronic) of the time and place for hearing the appeal. The peer review hearing must begin within ten business days of the committee's notification by the President. The Peer Review Committee shall conduct a hearing on the issues presented by the parties. A full record of the Peer Review Hearing will be taken stenographically or by recording and thereafter made available to the Faculty Member and to the College. The Faculty Member and the College shall have the right to have advisory or legal counsel, provided that legal counsel's role is limited to consultation with their clients. Each party shall pay its own costs.

| **Title:** Grievance for Faculty Terminations Policy – Peer Review Committee Procedure | **Procedure Number: 6-I** | Page **2** of **2** |
|---|---|---|
| **Board Policy or Policies:** Policy 6.26 – Grievance for Faculty Terminations | **Adopted by: Carrie Besnette Hauser, President** **Date of Last Revision**: December 12, 2016 | |

4. <u>Peer Review Committee Recommendation.</u> Within five days after the hearing, the Peer Review Committee shall submit to the College President written findings of fact and recommendations, including the rationale, and the record of the proceedings. A copy of the recommendation shall be provided to the Faculty Member.

5. <u>College President's Decision.</u> The College President shall render a decision in writing to the Appellant and the Vice President of Human Resources within five business days after receiving the Peer Review Committee's recommendation. If the College President substantially agrees with the Peer Review Committee recommendation, the decision is final. If the College President disagrees with the recommendation from the peer review committee, the College President must provide specific details regarding the reasons for his or her determination, which may include but not be limited to, the application of college policy, standards of faculty performance and conduct as found in college policies and procedures, observance of due process requirements under applicable law, and other requirements of state and federal law. If the decisions of the President and the Peer Review Committee differ, the Faculty Member may send to the President a written notice of appeal to the Board, and the President shall deliver such notice to the Board of Trustees, together with the Peer Review Committee findings, recommendations and record of proceedings, and shall schedule a review of the appeal by the Board of Trustees at its next meeting.

6. <u>Board of Trustee Review.</u> The review by the Board of Trustees shall be limited to a review of the record of the Peer Review Hearing. The Board shall consider the appeal at its next scheduled meeting so long as the appeal to the Board is received no later than 15 days prior to such meeting. The Board of Trustees shall accept or reject the President's recommendation upon completion of its review, and in no event later than ninety days of receipt of the notice of appeal. The Secretary to the Board of Trustees shall serve a copy of the Board of Trustee's decision upon all parties and the College President. This decision shall be final.

Additional Procedures. The President may promulgate additional procedures consistent with those set forth herein.

## COLORADO MOUNTAIN COLLEGE

## EMPLOYMENT AGREEMENT – REGULAR FACULTY

DATE FILED: July 28, 2020 3:54 PM
FILING ID: 9CC7DAE5CAEBD
CASE NUMBER: 2020CV30093

THIS FACULTY EMPLOYMENT AGREEMENT – REGULAR FACULTY (the "Agreement") is entered into by and between Colorado Mountain College (the "College") and Shawn Sigstedt ( the "Employee").

This Agreement sets forth the terms and conditions pursuant to which the Employee shall hold a Regular Faculty position with the College. By their signatures to this Agreement, the Employee and the College agree as follows:

1. The College hereby appoints Employee to hold the following Regular Faculty position:

| | |
|---|---|
| Title: | **Associate Professor** |
| Discipline: | **Biology** |
| Primary Location: | **Steamboat Springs** |
| Annualized Salary: | **$93,857.40** |
| Term of Agreement: | **August 19, 2019 to May 8, 2020 (170 days)** |

2. The College shall pay Employee the above referenced annualized salary, subject to required and agreed withholdings, in regular monthly installments commencing with the last working day of the first calendar month of the employment term, in accordance with College payroll procedures. The Employee agrees to serve in the capacity designated above, agrees to satisfy the Course Load requirements, and agrees to perform such other duties as may be assigned by the College and as further outlined in the applicable Faculty Job Description and the Curriculum and Instruction Manual. Employee shall be entitled to benefits available to full-time College employees, as modified by the College from time to time.

3. College Policy 4.12[1] sets forth required faculty course load, overload arrangements, release time and related matters. In addition to instructional time, and as required by the applicable job description and continuous performance plan, Employee will engage actively in professional development, service to the College, and community service. Additional details are addressed in the College Curriculum and Instruction Manual. Except as otherwise allowed by College Policies, Employee shall not perform any instructional, administrative, professional or other job duties that would cause the Employee's work requirements to exceed specified course load. In addition to the Annualized Salary specified above, Employee may be compensated for overload instruction or for project or supplemental work, in all cases to be authorized, in advance and in writing, by the appropriate supervisor or college vice president before any such work is performed.

4. Employee shall, pursuant to College Policies, procedures or rules, devote full time during College academic year, during the term stated above, to teaching and related professional activities, including advising students, keeping office hours, observing grading deadlines, administrative work, committee assignment, participation in commencement exercises and similar College activities. Except for leave or

---

[1] When used in this Agreement, the term "College Policy"¹refers to written policies adopted by the Board of

Trustees, together with implementing Procedures authorized by the President, all of which can be found at http://coloradomtn.edu/about-cmc/board_of_trustees/policies-procedures/.

release periods in accordance with written notices from employee's supervisor, Employee acknowledges that vacation time other than designated faculty leave is not available and shall not be taken during the academic year. Employee agrees to performance and teaching evaluations when specified by the College, and will permit periodic observation of teaching or course activities for such purpose.

1. The College President approves all full-time faculty employment and renewal decisions, and campus administration does not have authority to grant full-time faculty employment rights.

2. The College does not have a tenure system for any of its faculty members, and Employee's continued employment following the term of this Agreement may be modified, suspended, reassigned, relocated or eliminated by the College, subject only to Regular Faculty Member rights as set forth in College Policy 6.26 and its related Procedures.

      a. Employee acknowledges that, as a Regular Faculty Member, the College may determine not to renew Employee's employment for future terms for failure to demonstrate Competence (as defined in Policy 6.26), justifiable lack of work related to the discontinuance of a program area, or for other justifiable academic reason as determined by the College President & CEO. College Policy 6.26 further provides that the College President & CEO will make reasonable efforts to reassign Faculty Members facing non-renewal as a result of grounds other than Competence. Additional rights and obligations of Employee and the College in the event of non-renewal of this Agreement for future terms are set forth in College Policy 6.26 and its related Procedures.

      b. The College, subject to the procedural requirements in College Policy 6.26, may terminate this Agreement prior to the end of its stated term and without further liability to or claims against the College beyond the effective date of such termination.

3. The Employee is bound by all of the College's Policies, procedures, rules and regulations, the processes and requirements set forth in the Faculty Handbook and the Curriculum and Instruction Manual, and any other policy or procedure adopted by the College and applicable to College employees, and which are now in effect or which may be adopted from time to time (collectively, the "College Requirements"). The College has the right to take disciplinary action, including suspension or termination at any time should it find reason to believe that Employee has engaged in conduct warranting such action, including conduct which violates College Policies, moral turpitude adversely impacting College students, insubordination, illegal conduct (including criminal conduct prior to or during employment with the College), or neglect of duties. The following are provided as examples, only, and not as a complete listing of College Requirements:

      a. Employee acknowledges that the College relies on automated record-keeping in order to deliver a quality learning experience in a cost-effective manner. Employee agrees that the College may adopt policies or procedures requiring faculty to utilize Canvas or other learning management software as the exclusive platform for officially recording course requirements, grades and student communications related to courses.

      b. In order to comply with Colorado Open Records laws, state and federal laws and college rules concerning communications with students, and other regulatory requirements, the Employee understands that all instruction-related communications and college business must be conducted using College-sponsored electronic communications systems, including the official College electronic mail system.

    c. The College requires minimum instructional load for Employee, and Employee agrees that satisfaction of such requirement is a condition of employment.

    d. Employee agrees to complete training for College employees related to information technology security, sexual misconduct (Title IX and Cleary Act) policies, College safety and security, and such other matters as may be designated by the College in order to preserve its assets and protect the safety and well-being of the College community.

4. The Employee is also bound by the laws, regulations, rules and policies of the US Government, State of Colorado and all governmental officials, agencies and bodies having jurisdiction over the College, all as are now or may hereafter be in effect.

5. This Agreement and the documents referenced in this Agreement represent the entire agreement between the parties, and this Agreement may only be modified in writing signed by both parties. This Agreement shall be governed by the laws of the State of Colorado.

IN WITNESS WHEREOF the parties hereto have executed this Agreement as of the date and year first written above.

**COLORADO MOUNTAIN COLLEGE**    **EMPLOYEE**

_____
Dr. Carrie Besnette Hauser, President & CEO

_Shawn Sigstedt_
_____
Employee Signature

SHAWN SIGSTEDT
_____
Employee Printed Name

8 JULY 2019
_____
Date

4

March 18, 2020

Dear Shawn,

In these challenging times for all of us, I am reminded that CMC is not a place. It is people. From the professionals that keep our facilities safe and clean to the faculty who instill exceptional academic skills in our students, YOU make CMC a place that exemplifies the best of our small and justifiably proud communities. At the end of the day, it's our amazing team of people at CMC that matters most.

It was my intention with this letter to celebrate your 2019 accomplishments and to encourage similar efforts in the upcoming year. I'm still very proud of your accomplishment and grateful for your flexibility. However, our current environment forces me to reflect more on the people behind the merit.

The past few weeks have been unprecedented. I truly hope we never experience anything like them again. Nonetheless, because of your commitment to the college and impressive adaptability to ever-changing circumstances, I am very confident that CMC can handle just about anything the universe might throw at us. Even a global pandemic.

While the future is uncertain, we will get through this episode. And, it will very likely change us. In many ways, the current conditions are strengthening the college, presenting opportunities for us all to demonstrate our creativity, grit and resilience. It also demonstrates that CMC can innovate and adapt with lightning speed if pressed to do so.

As part of the current year (FY2019-20) budget, the Board of Trustees approved a merit pool to recognize talent and exceptional performance. Accordingly, you have earned **a one-time, earned merit payment of $1,407.86** in your next scheduled payroll, March 31, 2020. Technically, this merit payment is a demonstration of appreciation for your effort in 2019. But, I also like to reinforce that it is also a down payment on the incredible things you will do to help CMC thrive through and beyond the adversities we currently face.

Admittedly, there aren't yet answers for everything the college will endure over the coming months. However, I am absolutely confident that, with people like you here, we will prevail together. Thank you for your efforts to make CMC an exceptionally inclusive, innovative and student-centered institution. And, a place where we all care about each other, both now and in the days ahead.

With sincere regard and admiration,

Carrie Besnette Hauser, Ph.D.
President & CEO


Copy to employee file: Shawn Sigstedt, 180950

DATE FILED: July 28, 2020 3:54 PM
CASE NUMBER: 2020CV30005

EXHIBIT 5



**COLORADO**
MOUNTAIN COLLEGE

DATE FILED: July 28, 2020 3:54 PM
FILING ID: 9CC7DAE5CAEBD
CASE NUMBER: 2020CV30095

May 19, 2020

Mr. Shawn Sigstedt
Associate Professor
Colorado Mountain College
1275 Crawford Ave
Steamboat Springs, CO 80487

**RE: Notice of Non-renewal**

Dear Professor Sigstedt,

Last Friday, I received a copy of Mr. David Gifford's evaluation of your 2019-20 performance plan. In his correspondence with you regarding this matter, Mr. Gifford shared his determination that you failed to achieve critical standards expressed in your performance plan. Importantly, Mr. Gifford's determination was informed by feedback from other impartial faculty members, a review of your work products, and observations of your instruction.

Though I am not directly involved in the evaluation of faculty, as chief of staff at the college, I am familiar with your performance plan and its results. I have discussed the plan with your supervisors and President Hauser and determined that, according to Board Policy 6.26 (Grievance for Faculty Terminations) your contract will not be renewed in 2020-21 due to incompetence.

Board Policy 6.26, which was constructed by a committee of CMC faculty in 2015, defines competence as "the proven ability to sufficiently perform all duties as identified in College policy and/or job description." Additionally, this policy suggests that competence may be determined by way of the following:

- Teaching quality as indicated by a preponderance of formal and documented evidence regarding the faculty member's ability to perform professional teaching responsibilities. Such evidence may include student evaluations over the most recent 24 months and also all Performance Evaluations directed by the college and performed in the last 48 months.

Board Policy 6.26 allows the college President to not renew a faculty member's contract for failing to demonstrate competence at any time during the preceding two years. Based on the unsatisfactory results of your performance plan as well as documented evidence from the

EXHIBIT 5

preceding two years that resulted in the issuing of that performance plan, the college has determined that it will not renew your contract in 2020-21 for grounds of incompetence.

Your currently contract will be paid through June 30, 2020. Your benefits will expire on July 31, 2020.

According to Board Policy 6.26, you may appeal this decision with a peer review committee within ten (10) calendar days of service of the notice of nonrenewal, or by Monday June 1 (inclusive of the Memorial Day holiday on Monday, May 25, 2020). The peer review committee process is available in President's Procedure 6-I. Please note that the peer review committee must limit its consideration to facts resulting in the non-renewal decision only. That is, only evidence resulting in the determination of incompetence may be considered.

If you choose to appeal this decision, please submit your decision in writing to me by June 1, 2020. If I do not receive an appeal from you, your contract will expire on June 30, 2020 as described above.

Sincerely,

Matt Gianneschi
Chief Operating Officer & Chief of Staff


CC:    Carrie Besnette Hauser, President & CEO
       David Gifford, Dean, STEM
       Kathryn Regjo, Vice President of Academic Affairs
       Kathy Kiser-Miller, Vice President and Dean, Steamboat Springs
       JC Norling, Associate Dean, Steamboat Springs
       Johnathan Lawrence, Assistant Dean of Instruction
       Angela Wurtsmith, Director of Human Resources
       Richard Gonzales, General Counsel and Senior Inclusivity Officer

EXHIBIT 6

Final Draft
Peer Review Committee Recommendation
Regarding Colorado Mountain College's Decision
For Non-Renewal of Mr. Shawn Sigstedt's 2020-2021 Regular Faculty Employment Contract

DATE FILED: July 28, 2020 3:54 PM
FILING ID: 3679D68A9DAFE
CASE NUMBER: 2020CV30095

Overview

Following Board of Trustees' Policy 6.26, Grievance for Faculty Terminations, and the relevant Procedure Number 6-I, Peer Review Committee Procedure, five (5) full-time faculty members were selected to constitute a Peer Review Committee ("Committee") to conduct a hearing on the decision that Colorado Mountain College ("College") made for non-renewal of Mr. Shawn Sigstedt's annual employment contract as Associate Professor.

The charge of the Committee was to decide between two options: (a) the College satisfied the grounds for non-renewal according to Policy 6.26 or (b) the College did not satisfy the grounds for non-renewal according to Policy 6.26.

This document represents the Peer Review Committee's written findings of fact and recommendations.

Recommendation

The Peer Review Committee determines that the College has satisfied the grounds for non-renewal of Mr. Sigstedt's annual employment contract according to Board Policy 6.26.

Findings of Fact

In accordance with Procedure 6-I, Peer Review Committee Procedure for Grievance for Faculty Termination Policy 6.26, the Peer Review Committee considered the evidence that Colorado Mountain College presented to justify the performance-based non-renewal of Mr. Shawn Sigstedt's full-time regular faculty contact.

On June 22, 2020, the Peer Review Committee conducted a hearing via Webex on the issues presented by the parties: The College and Mr. Shawn Sigstedt. The meeting was recorded. In its June 22 hearing and subsequent deliberations from June 20 through June 29, 2020, the Committee did not consider material that is unrelated to the grounds for non-renewal.

*Definitions*

Competence: Board of Trustees Policy 6.26 defines competence as "the proven ability to sufficiently perform all duties as identified in College policy and/or job description… [including but not limited to] teaching quality as indicated by a preponderance of formal and documented evidence regarding the faculty member's ability to perform professional teaching responsibilities."

1

Non-renewal: Board of Trustees Policy 6.26 defines non-renewal as "the failure or refusal to offer to an employee a new contract of employment for the subsequent year."

Grounds for Non-renewal: Board of Trustees Policy 6.26 states "a regular Faculty Member's contract may be allowed to expire and may not be renewed for failing to demonstrate Competence at any time during the preceding two years, justifiable lack of work related to discontinuance of a program area, or for other justifiable academic reason as determined by the college President."

Notice for Non-renewal: Board of Trustees Policy 6.26 states "notice of Non-renewal shall be given by the President or his or her designee no later than sixty days preceding the end of the contract term."

*Overview of Circumstances*

The College's grounds for non-renewal of Mr. Sigstedt's faculty contract appear to be based on his "failing to demonstrate Competence at any time during the preceding two years" (Policy 6.26, p. 2). In a May 15, 2020 memorandum to Mr. Sigstedt, the Dean of STEM noted that the evaluation of the deliverables that Mr. Sigstedt submitted to fulfill the performance plan indicated that "serious curricular and pedagogical concerns remain."

The Dean of STEM further stated in this May 15, 2020 memorandum to Mr. Sigstedt, "I do not believe these concerns can be resolved. Such concerns are significant, as they directly relate to critical standards for academic professionalism, competence as a faculty member, and student success."

*Timeline for Evidence*

On July 12, 2019, the College's Dean of Science, Technology, Engineering, and Mathematics (STEM) and the Associate Dean of Academic Affairs (AA) of the Steamboat Springs Campus notified Mr. Shawn Sigstedt of a performance plan designed "to address and correct performance concerns about [his] professional work at the College."

The performance plan outlined the specific areas where Mr. Sigstedt needed to improve during fall 2019 semester:

1. Lack of curricular alignment with established learning outcomes in Guaranteed Transfer (GT) biology courses, including laboratory experiences
2. Untimely and insufficient use of Canvas Learning Management System
3. Unacceptable (contractual) language in course syllabi
4. Reports of confrontational, intimidating, and otherwise unprofessional behavior with students

On August 20, 2019, Mr. Sigstedt, the Dean of STEM, and the Associate Dean of AA signed the performance plan. The performance plan included the following statement:

"I, Shawn Sigstedt, have read and understand this Performance Plan. I understand that failure to make immediate improvements and/or to successfully complete this Performance Plan may result in further disciplinary action, up to and including the termination of my employment with Colorado Mountain College."

Although Mr. Sigstedt agreed to improve performance according to the plan, he had family health matters to address and notified the College on November 5, 2019. Therefore, the College granted FMLA leave from November 5, 2019 to February 17, 2020 and subsequently 13 days of sick leave and five (5) days of bereavement leave that extended Mr. Sigstedt's leave to March 20, 2020.

On March 19, 2020, the College granted approval for Mr. Sigstedt work remotely and the deadline for the performance plan was extended to May 1, 2020. Then, at the request of Mr. Sigstedt, the deadline for completing the performance plan was granted to May 3, 2020. During the period of the performance plan (August 20, 2019 to May 3, 2020), the evidence presented to the Peer Review Committee indicated that Mr. Sigstedt did not improve satisfactorily in the first two areas of the plan. Additionally, three science discipline specific faculty members conducted a review of Mr. Sigstedt's course materials and determined on May 7, 2020, that Mr. Sigstedt did not meet expectations.

During its June 22, 2020 hearing and subsequent deliberations, the Peer Review Committee members considered the evidence presented by the College that Mr. Sigstedt's courses lack alignment with Guaranteed Transfer learning outcomes and that certain actions of Mr. Sigstedt's resulted in a "hostile learning environment" for some students. The evidence included documentation from College administrators, faculty peers, and student evaluations and care reports.

The Peer Review Committee also considered the evidence representing the May 1, 2020 letter that Mr. Sigstedt wrote to the Dean of STEM outlining his plans to improve his teaching program and classroom logistics. However, the Committee determined that Mr. Sigstedt did not implement these improvements before the conclusion of the performance plan on May 3, 2020.

Summary

In summary, The Peer Review Committee determines that the College has satisfied the grounds for non-renewal of Mr. Sigstedt's annual employment contract according to Board Policy 6.26 based on Mr. Sigstedt's failure to demonstrate Competence in finishing all deliverables of required performance plan contract by the extended due date of May 3, 2020.

Date Submitted by Peer Review Committee: June 29, 2020

**Bradberry, Erik [CO]**

| | |
|---|---|
| **From:** | Fredrickson, Todd <tfredrickson@fisherphillips.com> |
| **Sent:** | Friday, June 19, 2020 5:36 PM |
| **To:** | Bradberry, Erik [CO] |
| **Cc:** | Gonzales, Richard; Fredrickson, Todd |
| **Subject:** | Sigstedt/CMC |

DATE FILED: July 28, 2020 3:54 PM
FILING ID: 9CC7DAE5CAEBD
CASE NUMBER: 2020CV30095

Dear Mr. Bradberry,

My firm and I are labor & employment counsel to Colorado Mountain College.  Mr. Gonzales (copied) forwarded to me your email and letter sent today at 3:41 p.m., which appears to have been delivered directly to the peer review panel setting forth legal arguments.  These arguments are unrelated to the evidence provided to the panel by Matt Gianneschi.  You also failed to raise them in your May 29, 2020 letter or June 10, 2020 email to Mr. Gonzales; rather, you raised them for the first time the Friday afternoon before the Monday morning hearing.  You also know or should know that direct contact with the panel by legal counsel is prohibited.   Instead, you communicated directly with and made yourself a direct participant before the panel.  Under these circumstances, your action is inappropriate for a number of reasons.

We are informing the panel that it should not engage in legal analysis, and the College instead will do that separately.  The panel will commence its hearing as scheduled, and the College expects that Professor Sigstedt will appear.  You will not be allowed to interact with the panel.



**Todd Fredrickson**
**Attorney at Law**

Fisher & Phillips LLP
1125 17th Street | Suite 2400 | Denver, CO 80202
tfredrickson@fisherphillips.com | O: (303) 218-3660

vCard  |  Bio  |  Website   *On the Front Lines of Workplace Law℠*

*This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.*