UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF COLORADO

Case No.: 20-cv-02704-WJM-GPG

**SHAWN SIGSTEDT,**
        Plaintiff,

v.

**COLORADO MOUNTAIN LOCAL COLLEGE DISTRICT; COLORADO MOUNTAIN LOCAL COLLEGE DISTRICT BOARD OF TRUSTEES; CARRIE HAUSER, as an individual; MATT GIANNESCHI, as an individual ; DAVID GIFFORD, as an individual,**
        Defendants.

---

## RESPONSE IN OPPOSITION TO MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S AMENDED COMPLAINT

---

The Plaintiff, Shawn Sigstedt, through counsel, hereby responds in opposition to the Defendants' Motion for Partial Dismissal of Plaintiff's Amended Complaint ("Motion to Dismiss" or "Motion"), as follows:

### I.    ARGUMENT

#### A.  Standard of Decision

In deciding a motion to dismiss, the court must "accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the plaintiff." *Smith v. U.S.*, 561 F.3d 1090, 1098 (10th Cir. 2009).  A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *SEC v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014).  A complaint attacked by a motion to dismiss "does not need detailed factual allegations." *Bell Atlantic Corp. v.*

1

*Twombley*, 550 U.S. 544, 555 (2007).  It only needs sufficient factual allegations to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Shields,* 744 F.3d at 641.

**B.  There is No Legal Basis upon which to Dismiss Professor Sigstedt's Breach of Contract Claim against the Board**

The Defendants' effort to dismiss the Board from Professor Sigstedt's breach of contract claim is based on the following syllogism: (1) Policy 6.26 is a policy of the College, not the Board; (2) To the extent Policy 6.26 constitutes an enforceable contract, the College is a party, but the Board is not; (3) Therefore, Professor Sigstedt may not enforce Policy 6.26 against the Board.  However, as discussed below, the Defendants' premise is both mistaken and contradicted by the Amended Complaint.

**1.  Policy 6.26 is enforceable against the Board.**

This case involves several contracts.  *See* ECF No. 27, pp 3-4.  One is Professor Sigstedt's employment contract for the 2019-2020 academic year.  *See* Exh. 3 to Am. Compl. The parties to that contract are the College and, of course, Professor Sigstedt.  *Id.*  The signatories to that agreement are Professor Sigstedt and Dr. Carrie Hauser, who signed the contract in her capacity as the College's President.  *Id.*  Among other terms, Professor Sigstedt's employment contract incorporates by reference what it refers to as "College Policies," which it defines as "written policies adopted by the Board of Trustees, together with implementing Procedures authorized by the President."  *Id.* at n.1.  The Defendants do not contest that Professor Sigstedt may enforce "College Policies" against the College.  *See* ECF No. 27, pp 3-4. To the contrary, the Defendants maintain that Professor Sigstedt may <u>only</u> enforce Policy 6.26 against the College, and not the Board.

2

In *Continental Airlines, Inc. v. Keenan*, 731 P.2d 708, 711-12 (Colo. 1987), the Colorado Supreme Court recognized that an employee may be able to enforce his employer's termination procedures under ordinary contract principles upon a showing of two elements. First, the employee must show that "in promulgating the termination procedures the employer was making an offer to the employee—that is, the employer manifested his willingness to enter into a bargain in such a way as to justify the employee in understanding that his assent to the bargain was invited by the employer and that the employee's assent would conclude the bargain." *Id.* (citing Restatement (Second) of Contracts, § 24 (1981)). Second, the employee must show that his initial or continued employment constituted acceptance of and consideration for those procedures. *Id.; see also Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1348 (Colo. 1988).

Analyzing *Keenan's* offer and acceptance requirement, the Colorado Supreme Court, in *Churchey*, quoted with approval the following passage from *Toussaint v. Blue Cross & Blue Shield of Michigan*, 292 N.W.2d 880, 892 (Mich. 1980):

> [W]here an employer chooses to establish personnel policies and practices and makes them known to its employees, the employment relationship is presumably enhanced. The employer secures an orderly, cooperative and loyal work force, and the employee the peace of mind associated with job security and the conviction that he will be treated fairly. No pre-employment negotiations need take place and the parties' minds need not meet on the subject; nor does it matter that the employee knows nothing of the particulars of the employer's policies and practices or that the employer may change them unilaterally. It is enough that the employer chooses, presumably in its own interest, to create an environment in which the employee believes that, whatever the personnel policies and practices, they are established and official at any given time, purport to be fair, and are applied consistently and uniformly to each employee. The employer has then created a situation instinct with an obligation.

Here, regarding the first *Keenan* element, the Board—not the College—promulgated Policy 6.26. ECF No. 17, ¶ 20; *see also* Exh. 1 to Am. Compl. The Board chose, presumably in its own interest, to adopt Policy 6.26, and it made that policy known to its employees, including Professor Sigstedt, by publishing it as an official personnel policy. *Toussaint*, at 892; Exh. 1 to Am. Compl.

Professor Sigstedt was aware of Policy 6.26, and viewed it as a commitment by the Board and the College that, if he should find himself in the position of being subject to its provisions, they would abide by the ground rules therein set forth. ECF No. 17, ¶¶ 19 and 48. Professor Sigstedt manifested his acceptance of the Board's offer by continuing to work for the College after the Board promulgated Policy 6.26. ECF No. 17, ¶ 48; *see also Lucht's Concrete Pumping, Inc. v. Horner*, 255 P.3d 1058, 1059-60 (continuation of employment adequate consideration in the context of employee's receipt of a benefit).

In short, the Board "created a situation instinct with an obligation" when it promulgated Policy 6.26. *Toussaint*, at 892. Consequently, the Defendants' insistence that the Board was not a party to that contract for purposes of Professor Sigstedt's breach of contract claim is unconvincing, and the cases they cite, which primarily stand for the proposition that an individual acting in his or her representative capacity is not a party to a contract, are inapposite. *See* ECF No. 27, pp 4-5. The Court should thus deny the Defendants' request to dismiss the Board from Professor Sigstedt's claim for breach of contract.

## C. There is No Legal Basis upon which to Dismiss Professor Sigstedt's Due Process Claim, Nor upon which to Grant Qualified Immunity to the Individual Defendants

The Defendants take three swings at Professor Sigstedt's procedural due process claim, arguing first that the Amended Complaint establishes that Sigstedt received adequate process;

4

second, that Sigstedt's breach of contract and C.R.C.P. 106(a)(4) claims provide an adequate post-deprivation remedy; and third, that the Individual Defendants are entitled to qualified immunity.  ECF No. 27, pp 5-9.  Each of the Defendants' attempts misses the mark.

### 1.  The Amended Complaint sufficiently alleges that the Defendants failed to provide Sigstedt with a hearing that met minimum due process standards.

In arguing that the Amended Complaint defeats Professor Sigstedt's procedural due process claim, the Defendants both misconstrue the basis of the Supreme Court's holding in *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) and paint the allegations in a light more favorable to themselves than to Sigstedt.  ECF No. 27, pp 5-6.

As a regular, full-time faculty member, Professor Sigstedt possessed a property interest deserving of procedural due process protections.  *Brenna v. Southern Colo. State College*, 589 F.2d 475, 476 (10th Cir. 1978); *see also Bd. of Regents v. Roth*, 408 U.S. 564, 576-77 (1972).  In *Loudermill*, the Supreme Court considered "what pre-termination process must be accorded a public employee who can be discharged only for cause."  470 U.S. at 535 (emphasis added.)  The Court balanced several competing interests—namely, the public employee's interest in continued employment; the government's interest in expeditiously removing unsatisfactory employees; and the risk of erroneous terminations.  *Id.* at 542-43.  The Court concluded that, prior to termination, something less than a full-blown evidentiary hearing will normally suffice.  *Id.* at 545.

However, as overlooked by the Defendants, the Court's holding in *Loudermill* relied on the availability of a full post-termination hearing under applicable state law.  *Id.*; *see also Langley v. Adams County Colo.*, 987 F.2d 1473; 1480 (10th Cir. 1993) ("Under *Loudermill*, the adequacy of pre-termination procedures must be examined in light of available post-termination procedures.").  A full post-termination hearing includes "the right to representation by an

attorney and the right to cross-examine adverse witnesses." *Workman v. Jordan*, 32 F.3d 475, 480 (10th Cir. 1994).

Here, the Defendants assume Professor Sigstedt received a pre-termination hearing. ECF No. 27, pp 5-6 (discussing requirements of a pre-termination hearing under *Loudermill*). However, in actuality, Professor Sigstedt received an extremely limited "appeal" after College officials notified him that they had already decided to terminate his employment. *E.g.,* ECF No. 17, ¶¶ 37-38. The same officials who decided to terminate Professor Sigstedt's employment purported to define the scope of his limited post-termination appeal. Exh. 5 to Am. Compl. ("Please note that the peer review committee must limit its consideration to facts resulting in the non-renewal decision only. That is, only evidence resulting in the determination of incompetence may be considered.").

The appeal hearing that followed, whether considered a pre- or post-termination hearing, was insufficient to meet minimum due process standards, which require, *inter alia*, that an employee who has a protected property interest in continued employment receive a meaningful opportunity to be heard. *E.g., Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."). In addition, "procedural due process often requires confrontation and cross-examination of those who would deprive a person of his or her livelihood." *Willner v. Comm. on Character*, 373 U.S. 96, 103 (1963).

As alleged in the Amended Complaint, the Defendants did not afford Professor Sigstedt a meaningful opportunity to be heard because they deprived him of, *inter alia*:

    a. adequate time to review and prepare his response to the College's charges of his alleged incompetence (ECF No. 17, ¶ 39.A);

b.  the ability to call fact witnesses to rebut the College's assertion of incompetence; (*Id.* at ¶ 39.B);

c.  the opportunity to confront and cross-examine witnesses for the College; (*Id.* at ¶ 39.C); and

d.  the chance to share his side of the story and demonstrate his competence, as the appeal hearing was far from complete when the review panel called it to an end (*Id.* at ¶ 42).

Consequently, as a post-termination hearing, Professor Sigstedt's appeal obviously failed to meet minimum due process standards.  *E.g., Mathews*, 424 U.S. at 333; *Willner*, 373 U.S. at 103; *Workman*, 32 F.3d at 480 (10th Cir. 1994).  As a pre-termination hearing, and as discussed further below, it still fell short in light of the lack of adequate post-deprivation procedures. *Langley,* 987 F.2d at 1480.

### 2.  Neither Professor Sigstedt's breach of contract nor C.R.C.P. 106(a)(4) claims satisfy the procedural requirements of the Due Process Clause.

The Defendants begin their next attack on Professor Sigstedt's due process claim by arguing that breach of contract affords a complete and adequate post-deprivation remedy that satisfies due process requirements.  ECF No. 27, p 6.  As support, the Defendants point to *Becker v. Kroll*, 494 F.3d 904, 921 (10th Cir. 2007).  *Id.*  In that case, the Court concluded "state <u>tort</u> remedies [met] the procedural requirements of the Due Process Clause." *Becker*, at 921 (emphasis added); *see also Parratt v. Taylor*, 451 U.S. 527, 535-44 (1981) (where pre-deprivation remedies cannot anticipate and prevent a state actor's wrongful act, post-deprivation <u>tort</u> remedies are adequate to satisfy due process requirements).

As an initial matter, unlike the cases cited by the Defendants, Professor Sigstedt's breach of contract claim does not lie in tort.  Consequently, the law of contracts, not torts, shapes the

remedies available should he succeed on that claim. In addition, the issues raised by Professor

Sigstedt's breach of contract claim are wholly separate from those related to his due process

claim. Whereas the contract claim tests whether the College and the Board breached contractual

promises to, *inter alia*, notify Professor Sigstedt of his non-renewal at least sixty days prior to the

end of his 2019-2020 contract term, the due process claim challenges the adequacy of the

procedures that unfolded after Sigstedt received late notice of non-renewal. Professor Sigstedt's

contract claim is not a post-deprivation opportunity to challenge the merits of his discharge;

indeed, he would have no contract claim (and no form of post-deprivation evidentiary hearing)

had the breach of contract Defendants not failed to provide proper notice of non-renewal.

Next, the Defendants insist that Professor Sigstedt's C.R.C.P. 106(a)(4) claim provides an

adequate remedy to address two of the due process shortfalls evident in this case—i.e. that the

Defendants did not allow Sigstedt to confront adverse witnesses or fully present his side of the

story. ECF No. 27, p 7. This is clearly incorrect.

First, review under C.R.C.P. 106(a)(4) does not exist as a matter of right in every

discharge such as the one at hand; rather, it is limited to matters where a "governmental body or

officer … exercising judicial or quasi-judicial functions has exceeded its jurisdiction or abused

its discretion, and there is no plain, speedy and adequate remedy otherwise provided by law."

C.R.C.P. 106(a)(4). Thus, Professor Sigstedt's C.R.C.P. 106(a)(4) claim does not supplant any

of his other claims. Instead, it exists as an alternative should none of them offer "plain, speedy

and adequate [relief]."

Second, Professor Sigstedt's claim for C.R.C.P. 106(a)(4) review will neither offer him

the opportunity to confront and cross-examine College witnesses, nor to offer evidence in

support of his contention that he was a fully competent professor. Review under Rule 106(a)(4)

is limited to whether a body of the College or one of its officers, exercising quasi-judicial functions, has "exceeded its jurisdiction or abused its discretion, based on the evidence in the record before the defendant body or officer." C.R.C.P. 106(a)(4)(I). Hardly a full post-termination hearing, *see Loudermill*, 470 U.S. at 546, review under Rule 106(a)(4) merely amounts to a paper review of the existing record.

Third, a § 1983 claim for damages exists separately from an action for reviewing a quasi-judicial decision made by a government entity. *Bd. of County Comm'rs v. Sundheim*, 926 P.2d 545, 549 (Colo. 1996). *See also Sclaventis v. Cherry Hills Bd. of Adjustment*, 751 P.2d 661, 665 (Colo. App. 1988) (allowing property owners to maintain claim under § 1983 against planning board for alleged constitutional violations because owners sought monetary damages under that claim, and not declaratory or injunctive relief). Here, Professor Sigstedt seeks to recover damages under his § 1983 claim, including for emotional distress and harm to his reputation, that are not available on his breach of contract or 106(a)(4) claims.

### 3. The Individual Defendants are not entitled to qualified immunity because Sigstedt alleges they violated clearly established rights.

The Defendants next argue that Hauser, Gianneschi, and Gifford (the "Individual Defendants") are entitled to qualified immunity, insisting that Professor Sigstedt has failed to allege that they violated clearly established rights. ECF No. 27, pp 7-9. Again, the Defendants are mistaken.

Under the doctrine of qualified immunity, the Individual Defendants would "be shielded from suit if they demonstrate that the alleged conduct, which extinguished [Professor Sigstedt's] property right, did not violate clearly established law that a reasonable person would have known." *Calhoun v. Gaines*, 982 F.2d 1470, 1474 (10th Cir. 1992) (citing *Bee v. Greaves*, 910

9

F.2d 686, 687 (10th Cir. 1990). In assessing whether a right is clearly established, courts note that unlawfulness of the conduct in question "need not have previously been held unlawful" and there need not "be a strict factual correspondence between the cases establishing the law and the case at hand. *Id.* (citing *Eastwood v. Dept. of Corrections*, 846 F.2d 627, 630 (10th Cir. 1988).

In *Calhoun*, a college professor's employer failed to notify him that his employment for the succeeding academic year would be non-renewed by the deadline for doing so, and then terminated his employment without providing adequate pre- and post-termination proceedings. 982 F.2d at 1472; 1476-77. After the professor's termination, a committee of faculty members convened to consider whether the professor was afforded adequate due process and procedural protections. *Id.* at 1472 n. 1. The Court held:

> [I]t is well established that a college professor, even in an employment setting that does not have a formal system for tenure, may, through contract, agreements and/or policy manuals and procedures, attain a constitutionally cognizant property right in an expectation of future employment, of which he may not be deprived without constitutionally adequate pre-termination and post-termination proceedings.

*Id.* at 1475 (citing *Loudermill, supra,* 470 U.S. 532 (1985)); *Perry v. Sindermann* 408 U.S. 593 (1972); *Board of Regents v. Roth*, 408 U.S. 564 (1972). Pointing to the lack of a post-termination hearing—notwithstanding the limited review undertaken by the committee of faculty members—the Court concluded the professor in *Calhoun* "did not receive constitutionally adequate post-termination process." *Id.* at 1476-77.

Contrary to the Defendants' assertion that the Amended Complaint is devoid of allegations implicating violations of clearly established rights, Professor Sigstedt has alleged, *inter alia,* that:

10

a.    As a regular, full-time professor, he possessed a property interest in continued employment.  ECF No. 17, ¶ 21; *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1254 (10th Cir. 1998) (substantive restrictions on discretion to discipline or discharge employee, such as requirement that discipline may only be imposed for cause, create protected property interest).

b.    Defendant Gifford issued to Professor Sigstedt an "improvement plan" that he and Defendant Gianneschi intended to use as a facially legitimate vehicle for depriving Sigstedt of his property interest in continued employment.  ECF No. 17, ¶ 35.

c.    Prior to Professor Sigstedt's appeal hearing, Defendant Gianneschi misinformed him as to the nature and scope of the appeal.  ECF No. 17, ¶ 37.

d.    Defendant Gianneschi advised the Peer Review Panel, as he had misinformed Professor Sigstedt, that, "the peer review committee must limit its consideration to facts resulting in the non-renewal decision only."  ECF No. 27, ¶¶ 37; 58; *see also* Exhs. 2 and 5.

e.    In advising the Peer Review Panel, Gianneschi—the College administrator chiefly responsible for advancing the College's case for Professor Sigstedt's termination—called into question the Panel's objectivity.  ECF No. 27, ¶ 58; *see also Withrow v. Larkin*, 421 U.S. 35, 46-47 (1975) (fundamental principle of due process is a hearing before an impartial tribunal); *Weissman v. Bd. of Educ.*, 547 P.2d 1267, 1276 (Colo. 1976) (public employers to separate functions of prosecutor and decision-maker in the interest of affording adequate due process protections).

f.    Pursuant to a procedure adopted by Defendant Hauser, Professor Sigstedt was not allowed to confront adverse witnesses.  ECF No. 27 ¶¶ 39.C; 57; Exh. 2 to Am. Compl. (adopted by President Hauser December 12, 2016).  Under the same procedure, Defendant Hauser allowed Professor Sigstedt to have "advisory" legal counsel present during the review hearing, who was

prohibited from addressing the Review Panel directly.  Exh. 2 to Am. Compl.; *see also* Exh. 7 to Am. Compl.

The Individual Defendants should have known that the process they afforded to Professor Sigstedt was constitutionally inadequate.  *Calhoun, supra* at 1476 ("Since *Roth*, it has been clear that a property interest in continued employment may not be terminated without a constitutionally adequate hearing.").  Indeed, *Loudermill*, cited by the Defendants (ECF No. 27, pp 5-6), "established that some form of pre-termination hearing, plus a full-blown adversarial post-termination hearing (unless such was included as part of the pre-termination proceedings) are required."  *Calhoun*, 982 F.2d at 1476 (emphasis added) (citing *Loudermill*, 470 U.S. 532 (1985)).  As alleged in the Amended Complaint, the Individual Defendants, acting under color of law, deprived Professor Sigstedt of anything resembling a "full-blown adversarial" hearing.  ECF No. 27, ¶¶ 34-45; 56-61.  Consequently, the Individual Defendants are not entitled to qualified immunity.

D. **There is No Legal Basis upon which to Dismiss Professor Sigstedt's Statutory Claim against the Board**

State law provides a long list of powers the Board of Trustees possesses, many of which it presumably delegates to College administrators, including the Individual Defendants in this case.  § 23-71-122, C.R.S. (2020) (listing local college district board of trustee powers).  The next section of the statute, § 23-71-123, C.R.S., sets forth a much smaller number of duties, which unlike the Board's many statutory powers, are non-delegable.  *Trustees of the State Normal School v. Wightman*, 25 P.2d 193, 195 (Colo. 1933); *Big Sandy Sch. Dist. No. 100-J v. Carroll*, 433 P.2d 325, 328 (Colo. 1967), *overruled on other grounds by Normandy Estates*

*Metro. Recreation Dist. v. Normandy Estates, Ltd.*, 553 P.2d 386 (Colo. 1976); *Lazuk v. Sch.*

*Dist. No. 1 of Denver*, 22 P.3d 548, 552 (Colo. App. 2000).

In *Big Sandy*, the Colorado Supreme Court summarized the rules governing delegation as

follows:

> [A] quasi-municipal corporation … may delegate to subordinate
> officers and boards powers and functions which are ministerial or
> administrative in nature, where there is a fixed and certain standard
> or rule which leaves little or nothing to the judgment or discretion
> of the subordinate.  However, legislative or judicial powers,
> involving judgment and discretion on the part of the municipal
> body, which have been vested by statute in a municipal corporation
> may *not* be delegated unless such has been expressly authorized by
> the legislature.

433 P.2d at 328 (emphasis in original) (citing C. Rhyne, Municipal Law 74, and E. McQuillan,

Municipal Corporations 845-49 (3d ed. 1966).

The Board in this case was duty-bound to determine "educational policies and provide for

the proper execution of such by selecting competent administrators, instructors, and other

personnel" and "discharge or otherwise terminate the employment of any personnel."  § 23-71-

123(1).  Acts of hiring and firing involve "judgment and discretion on the part of the municipal

corporation" and are a far cry from the "ministerial or administrative" functions that may be

delegated without an express legislative authorization.  *Big Sandy*, at 328.

The Amended Complaint alleges that the Board failed to carry out its statutory duties by

impermissibly delegating the responsibility for terminating Professor Sigstedt's employment to

subordinate administrators.  ECF No. 17, ¶¶ 63-66.  In its Motion, the Board does not argue that

its challenged acts of delegation were somehow lawful; rather, it urges the Court to conclude that

the statute setting forth its duties provides no right of action to an aggrieved plaintiff.  As

explained below, the Board is mistaken.

**1.  Section 23-71-123 provides an implied right of action.**

Courts weigh three well-known factors in determining whether to infer a right of action in a statute that contains no express right of action.  Those factors are (a) whether the plaintiff is within the class of persons intended to be benefitted by the statute; (b) whether the legislature intended to create, albeit implicitly, a private right of action; and (c) whether an implied civil remedy would be consistent with the purposes of the legislative scheme.  *City of Arvada ex rel. Arvada Police Dept. v. Denver Health & Hosp. Auth.*, 403 P.3d 609, 614-15 (Colo. 2017); *Allstate Ins. Co. v. Parfrey*, 830 P.2d 905, 911 (Colo. 1992).  Here, notwithstanding the Board's insistence to the contrary, the answer to each of these questions is "Yes."

First, Sigstedt, who worked as a professor at the College and saw his employment terminated by College administrators instead of the Board, is within the class of persons who benefit from § 23-71-123, C.R.S.  While the Defendants are correct that the Board is within the class of "persons" who benefit most broadly from the statute, any implication on their part that there can be but one class of beneficiaries in this, or any other, statute is inconsistent with the plain language of the statute and common sense.  Laws can, and often times do, benefit different classes of people.  The law in issue here benefits, among other classes of persons, the Board <u>and</u> College employees, including Professor Sigstedt.  College employees benefit from the language that requires the Board to fulfill its duty to make hiring and firing decisions because it insures that elected officials, who are ultimately accountable to voters, rather than unelected administrators, make and carry out those crucial decisions.

Second, the legislature must have intended to create a private right of action when it enacted the statute in issue.  Presumably, when it enacted the statute and listed hiring and firing decisions as among the small number of Board duties, it was aware of the case law surrounding

14

the delegation doctrine, described above.  *E.g., Virgil v. Franklin*, 103 P.3d 322, 327-28 (Colo. 2004) (legislature presumed aware of existing case law precedent when it enacts or amends statutes).  The legislature did not expressly authorize boards to delegate the duties set forth in § 23-71-123 to subordinate administrators; therefore, those duties—like hiring and firing—that require judgment and discretion on the board's part, are non-delegable.  If an aggrieved employee, like Professor Sigstedt, is unable to challenge decisions by the Board to allow its administrators to carry out non-delegable duties, then the statute becomes, in essence, unenforceable.  It is unreasonable to assume that the General Assembly would intend to create an important requirement—i.e. that boards of trustees do the important job of hiring and firing faculty members—and at the same time provide no chance of a remedy to a faculty member fired in direct violation of that requirement.

Third, giving faculty members the right to complain about unlawfully delegated firing decisions is entirely consistent with the General Assembly's decision to prohibit such delegation by enacting the statute in the manner it did.  Indeed, the prohibition against delegation of hiring and firing decisions would be effectively meaningless if the only people directly affected by a violation of that prohibition—i.e. faculty members and other personnel—were prevented from complaining about it.

For all of these reasons, the Court should decline to adopt the Defendants' insistence that § 23-71-123 provides no right of action to plaintiffs like Professor Sigstedt.

## II.    CONCLUSION

WHEREFORE, for all of the above-stated reasons, the Plaintiff, Shawn Sigstedt, respectfully urges the Court to deny in its entirety the Defendants' Partial Motion for Dismissal of Plaintiff's Amended Complaint.

DATED this 30th day of November 2020.

Respectfully submitted,

s/ *Erik G. Bradberry*
Erik G. Bradberry
Colorado Education Association
1500 Grant Street
Denver, CO 80203
(303) 837-1500
Fax: (303) 861-2039
ebradberry@coloradoea.org

16

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of November 2020 a true and correct copy of the foregoing RESPONSE IN OPPOSITION TO MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S AMENDED COMPLAINT was electronically filed via was electronically filed via the CM/ECF E-Filing system with service requested as follows:

Jacqueline Guesno, Esq.
Jeffrey McClelland, Esq.
Jackson Lewis, P.C.
950 17th Street
Suite 2600
Denver, CO 80202

s/ *Bridget Calip*
Bridget Calip, Paralegal

17