IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 20-cv-2704-WJM-GPG

SHAWN SIGSTEDT,

    Plaintiff,

v.

COLORADO MOUNTAIN LOCAL COLLEGE DISTRICT,
COLORADO MOUNTAIN LOCAL COLLEGE DISTRICT BOARD OF TRUSTEES,
CARRIE HAUSER, in her individual capacity,
MATT GIANNESCHI, in his individual capacity, and
DAVID GIFFORD, in his individual capacity,

    Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

This matter is before the Court on Defendants Colorado Mountain Local College District (the "College"), Colorado Mountain Local College District Board of Trustees, Carrie Hauser, Matt Gianneschi, and David Gifford's (collectively, "Defendants") Motion for Summary Judgment ("Motion"), in which they request that the Court enter judgment in their favor and against Plaintiff Shawn Sigstedt on all claims. (ECF No. 95.) For the reasons explained below, the Motion is granted in part and denied in part.

**I. STANDARD OF REVIEW**

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is "material" if, under the

relevant substantive law, it is essential to the proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita*, 475 U.S. at 586–587).

## II. BACKGROUND

Plaintiff began working for the College in the Fall of 2007 as a biology professor. (ECF No. 95 ¶ 1.) Plaintiff was employed as a regular faculty member with a one-year contract which had been renewed several times. (*Id*. ¶ 2.)

On May 10, 2019, Kathy Kiser Miller, Vice President and Campus Dean, sent Defendant Gifford, the Dean of the STEM department, and Dr. John Lawrence, the Assistant Dean of Instruction, a letter informing them of a student concern regarding Plaintiff's alleged unprofessional behavior, questionable pedagogy and grading, and general concern for the welfare and well-being of students taking his courses. (*Id*. ¶ 4.)

Within a week of the email, Miller, Lawrence, and Dean J.C. Norling, had a meeting to discuss the next steps, and they decided that Lawrence should gather more information. (*Id.* ¶ 5.)

On May 13, 2019, Lawrence sent Defendant Gifford a memorandum containing additional complaints about Plaintiff's teaching, including: (1) hostile learning environment; (2) lack of rigor and inappropriate learning objectives/topics; and (3) a lack of trust. (*Id.* ¶ 6.) In addition, on May 17, 2019, one of Plaintiff's colleagues, a biology professor, e-mailed the College complaining about Plaintiff's lack of rigor in his teaching and that his students were not being adequately prepared for subsequent courses. (*Id.* ¶ 7.)

After investigating and consulting with other College employees, Defendant Gifford decided to place Plaintiff on a performance plan for the fall of 2019 ("Performance Plan"). (*Id.*) The Performance Plan addressed several issues, including: (1) Plaintiff's course's curricular alignment with established learning outcomes in other biology courses; and (2) untimely and insufficient use of Canvas, the College's learning management system. (*Id.* ¶ 9.) Canvas is used to communicate with students outside the classroom and to keep them apprised of their grades, and it is required to be used in all for-credit courses. (*Id.*)

On July 8, 2019, Plaintiff signed his employment agreement for the 2019 academic year. (*Id.* ¶ 10.) Plaintiff's employment was subject to elimination for failure to demonstrate "competence," which is defined in College Policy 6.26 as a "proven ability to sufficiently perform all duties as identified in College policy and/or job description." (*Id.* ¶ 11.)

On July 13, 2019, Defendant Gifford e-mailed Plaintiff a Notice of Performance Plan, the Performance Plan, and excerpts of complaints and supporting evidence for the Performance Plan.  (*Id.* ¶ 12.)  The Notice of Performance Plan identified the issues that the Performance Plan was intended to address, and informed Plaintiff that he could provide written responses to the complaints and submit a formal grievance to Human Resources against his supervisors.  (*Id.*)

On August 20, 2019, Defendant Gifford and Norling met with Plaintiff to discuss Plaintiff's Performance Plan with him.  (*Id.* ¶ 13.)  During the meeting, Defendant Gifford reviewed the College's expectation that professors teach curricula as required by State Student Learning Outcomes and the Common Course Numbering System of the Colorado Community College System because this was the primary concern regarding Plaintiff's teaching.  (*Id.*)  The Performance Plan included the following language:

> I, Shawn Sigstedt, have read and understand this Performance Plan. I understand that failure to make immediate improvements and/or to successfully complete this Performance Plan may result in further disciplinary action, up to and including the termination of my employment with Colorado Mountain College.

(ECF No. 99-1 at 9–10.)  Plaintiff signed the Performance Plan and did not submit a formal grievance contesting it.  (ECF No. 95 ¶ 14.)[1]

The Performance Plan required Plaintiff to submit course materials to Defendant Gifford and Lawrence by September 13, 2019, so that they could review the quality of

---

[1] Plaintiff admits that he signed the Performance Plan but disputes whether he agreed to its terms. (ECF No. 124 ¶ 14.)  But regardless of whether he agreed to its terms, the Performance Plan was read and signed by Plaintiff, and therefore, it put him on notice of the complaints about his performance and the fact that his job was in jeopardy.

his instruction.  (*Id*. ¶ 16.)  But Plaintiff did not submit any course materials.  (*Id*. ¶ 17.)[2] Instead, Plaintiff provided hundreds of statements from students regarding their experiences in Plaintiff's classes.  (*Id*.)  Defendant Gifford reviewed these statements and determined that they corroborated that Plaintiff's teachings diverged from required learning outcomes.  (*Id*.)[3]

On October 7, 2019, Defendant Gifford and Tim Loes, the Chair of the Biology Department, observed Plaintiff's Biology 111 class.  (*Id*. ¶ 18.)  According to Defendant Gifford and Loes, they observed that the class lacked structure; that Plaintiff struggled with the subject matter in the slides he used as part of the lesson; and that Plaintiff extensively discussed material unrelated and wholly extraneous to general college biology.  (*Id*.)[4]  Additionally, Defendant Gifford and Loes were concerned about Plaintiff using what they considered to be a highly questionable instructional practice in which students volunteered interesting concepts from the material, "googled" the concept, and then clicked on links that populated under the subject.  (*Id*. ¶ 19.)[5]

It is undisputed that Plaintiff did not meet the requirements of the Performance Plan.  (ECF No. 95 ¶¶ 31–34; ECF No. 95-1 at 52.)  Specifically, Plaintiff failed to

---

[2] Plaintiff denies this fact but does not point to any evidence that he did submit his course materials.  (*See* ECF No. 124 ¶ 17.)  Therefore, this fact is uncontroverted for the purposes of this Motion.

[3] Plaintiff denies that his teaching diverged from required learning outcomes, but he does not dispute that Gifford came to that conclusion.  (ECF No. 124 ¶ 17.)

[4] Plaintiff denies this fact but does not point to any evidence to the contrary.  (ECF No. 124 ¶ 18.)  Therefore, this fact is uncontroverted for the purposes of this Motion.

[5] Plaintiff denies that this exercise was a highly questionable instructional practice, but the fact that Loes and Gifford considered it to be highly questionable is uncontested.  (ECF No. 124 ¶ 19.)

upload his lecture content to Canvas, as required by the Performance Plan. (ECF No. 95 ¶ 31.)[6]  He also failed to put all of his labs onto Canvas, as required by the Performance Plan. (*Id*. ¶ 32.)[7]  Further, Plaintiff did not provide course material for his Biology 221 class, as required by the Performance Plan. (*Id*. ¶ 33.)

On May 15, 2020, Defendant Gifford sent a letter to the College President's office concerning Plaintiff's failure to complete the Performance Plan. (*Id*. ¶ 36.)  Defendant Gifford had determined that Plaintiff did not display the ability to complete the Performance Plan based on the amount of time that Plaintiff had to work on it, the minimal professional obligations he had during the final six weeks of the Performance Plan, and the inadequate progress he had made. (*Id*. ¶ 35.)

On May 19, 2020, Defendant Gianneschi, Chief Operating Officer and Chief of Staff, sent a letter to Plaintiff on behalf of the College informing him that his employment agreement would not be renewed because he failed to complete the Performance Plan. (*Id*. ¶ 37.)  The letter apprised Plaintiff of his right to appeal the decision. (*Id*.)  Plaintiff appealed the College's decision with the assistance of counsel. (*Id*.)

As a result of Plaintiff's appeal, the College assembled a Peer Review Committee comprised of other faculty members (the "Committee") to determine if the

---

[6] Plaintiff denies this fact arguing that his attempts to upload the content of his lectures were "frustrated." (ECF No. 124 ¶ 31.)  However, Plaintiff's efforts being frustrated does not change the fact that the requirements of the Performance Plan were not met.  Therefore, the Court considers this fact to be uncontroverted for the purposes of this Motion.

[7] Plaintiff denies this fact but does not point to any evidence in the record to the contrary. (ECF No. 124 ¶ 32.)  Moreover, the record shows that Plaintiff admitted this fact in his deposition. (ECF No. 95-1 at 43.)  Therefore, this fact is uncontroverted for the purposes of this Motion.

College satisfied the grounds for non-renewal by reviewing the accuracy and relevance of the evidence the College relied on to make its decision.  (*Id*. ¶ 40.)  The Committee held a hearing on June 22, 2020, which was attended by Plaintiff, Plaintiff's lawyer, and representatives of the College.  (*Id*. ¶ 44.)

Defendants Gifford and Gianneschi attended the hearing and explained the basis of the College's decision to not renew Plaintiff's contract.  (*Id*.)  Plaintiff could have questioned them but chose not to.  (*Id*.)[8]  During the hearing, Plaintiff testified and presented evidence that he believed showed that the College's decision was incorrect.  (*Id*. ¶ 45.)  However, he also admitted that he did not complete the Performance Plan.  (*Id*.)  Plaintiff asked for additional time or an additional hearing, but after reviewing the documentation provided by Plaintiff and the College, the Committee determined that additional time was unnecessary because the evidence supporting non-renewal was overwhelming.  (*Id*. ¶ 50.)

After the hearing, the Committee conferred two more times regarding Plaintiff's failure to complete the Performance Plan, the reasonableness of the amount of time Plaintiff was given to complete the Performance Plan, the notice provided to Plaintiff by the College regarding non-renewal, and Plaintiff's competence.  (*Id*. ¶ 48.)[9]

---

[8] Plaintiff denies this fact but does not point to any evidence to the contrary.  (ECF No. 124 ¶ 44.)  Moreover, in his deposition testimony, Plaintiff admitted that he could have asked Defendants Gifford and Gianneschi questions.  (ECF No. 95-1 at 52.)  Therefore, this fact is uncontroverted for the purposes of this Motion.

[9] Plaintiff denies that the Committee considered his competence because he claims their recommendation was "silent regarding several factors that Policy 6.26 lists as mandatory considerations in weighing a professor's competence."  (ECF No. 124 ¶ 48.)  The Court has reviewed the portion of the record cited by Plaintiff in support of his argument; it does not mention factors that must be included in the Committee's recommendation.  Therefore, it is uncontroverted that the committee did consider Plaintiff's competence.  (*See* ECF No. 124-6 at 2–3 (Peer Review Committee Recommendation, including a detailed discussion of Plaintiff's

On June 29, 2020, the Committee sent their Recommendation in writing to Defendant Hauser and Plaintiff.  (*Id*. ¶ 51.)  The Committee's Recommendation stated that they considered Plaintiff's competence after being placed on the Performance Plan and determined that the College satisfied the grounds for non-renewal of Plaintiff's Agreement.  (*Id*.)

Defendant Hauser agreed with the Committee's conclusion, and on June 30, 2020, she sent an e-mail to Plaintiff stating that she had sustained the Committee's Recommendation.  (*Id*. ¶¶ 52–53.)[10]  At that point there were no more internal appeals available.  (*See* ECF No. 124-1.)

On July 28, 2020, Plaintiff initiated this action in Colorado state court, challenging his termination.  (ECF No. 1-1.)  Defendants removed the action to this Court on September 4, 2020.  (ECF No. 1.)  Plaintiff filed his Amended Complaint on September 24, 2020, which is the operative complaint.  (ECF No. 17.)  He brings a total of four claims: (1) breach of contract; (2) deprivation of procedural due process in violation of the Fourteenth Amendment to the United States Constitution; (3) violation of Colorado Revised Statute § 23-71-123; and (4) review pursuant to Colorado Rule of Civil Procedure 106(a)(4).  (*Id*. ¶¶ 46–71.)

Defendants filed the instant Motion on January 14, 2022.  (ECF No. 95.)  Plaintiff responded on February 11, 2022 (ECF No. 124), and Defendants replied on March 18, 2022 (ECF Nos. 117).  On July 18, 2022, in response to the Court's order, Plaintiff filed

---

competence).)

[10] Policy 6.26 required the College to notify Plaintiff of non-renewal no later than 60 days before the end of his contract term.  (ECF No. 124 at 9.)  The College did not notify Plaintiff of non-renewal 60 or more days before the end of his contract term.  (*Id*. at 10.)

8

an amended response which attached exhibits that had been mistakenly omitted in their previous filling. (ECF No. 124.)

### III. FEDERAL CLAIM

Plaintiff brings a claim against all Defendants under 42 U.S.C. § 1983 for violation of his due process rights. (ECF No. 17 at 11.) Plaintiff alleges that he was denied the property interest in his continued employment with the College without a sufficient termination procedure. (*Id*.)

The Fourteenth Amendment's Procedural Due Process Clause "ensures that a state will not deprive a person of life, liberty or property unless fair procedures are used in making that decision." *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998). The Court analyzes due process claims in two steps. *See Ky. Dep't of Corr. v. Thompson,* 490 U.S. 454, 460 (1989). "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Id.*

The parties agree that Plaintiff held a constitutionally protected property interest in his continued employment with the College. (ECF No. 95 at 22.) Therefore, the only question here is whether the termination procedures afforded Plaintiff were constitutionally adequate.

### A.     Pre-termination Due Process[11]

Defendants argue that, as a matter of law, Plaintiff was afforded adequate pre-

---

[11] Plaintiff argues the pre-termination process afforded him started on May 19, 2020, when the College notified him of its decision not to renew his contract. (ECF No. 124 at 18.) He argues that hearing held by the Committee to review the College's decision was pre-termination process and that he "received no post-termination due process at all." (Id. at 19.) The Court

9

termination due process.  (ECF No. 95 at 23–25.)

Pre-termination procedural due process need only include (1) oral or written notice to the employee of the charges against him; (2) an explanation of the employer's evidence; and (3) an opportunity for the employee to present his side of the story. *Gilbert v. Homar*, 520 U.S. 924, 929 (1997).  "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement."  *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546 (1985). The standards for pre-termination process "are not very stringent."  *Hulen v. Yates*, 322 F.3d 1229, 1248 (10th Cir. 2003).  The Tenth Circuit has "upheld as sufficient to meet these requirements informal proceedings, such as pretermination warnings and an opportunity for a face-to-face meeting with supervisors, and even a limited conversation between an employee and his supervisor immediately prior to the employee's termination."  *Riggins v. Goodman*, 572 F.3d 1101, 1108 (10th Cir. 2009)

It is undisputed that on July 13, 2019, Defendant Gifford e-mailed Plaintiff the Performance Plan, the Notice of Performance Plan, and excerpts of the evidence supporting the College's decision to implement the Performance Plan.  (ECF No. 95 ¶ 12.)  Defendant Gifford identified the concerns that the College had with Plaintiff's performance and informed him that he could provide written responses to the

---

disagrees.

It is undisputed that the May 19, 2020 letter stated "that Plaintiff's employment agreement would not be renewed based on incompetence under Board Policy 6.26 because he failed to complete his performance plan."  (ECF No. 95 ¶ 37.)  Further, it is undisputed that the letter "apprised Plaintiff of his right to appeal the decision."  (Id.)  Had Plaintiff not appealed the non-renewal decision made by the College the decision to terminate Plaintiff would have been final on May 19, 2020.  Thus, in considering post-termination process afforded Plaintiff, the Court looks to events occurring after May 19, 2020.  And in considering pre-termination process afforded Plaintiff, the Court looks to events occurring before May 19, 2020.

10

complaints against.  (*Id*.)  Plaintiff signed the Performance Plan on August 20, 2019, after a meeting with his supervisors in which he was confronted with the evidence against him and had a chance to tell his side of the story.  The Performance plan explained that his "failure to make immediate improvements and/or to successfully complete this Performance Plan" could result in termination of his employment.  (ECF No. 99-1 at 9–10.)

It is also undisputed that Plaintiff did not meet the requirements of the Performance Plan, even though he was given a full semester to satisfy its requirements.  (ECF No. 95 ¶¶ 30–34, 45.)  On May 19, 2020, the College notified Plaintiff that his employment agreement would not be renewed.  (*Id.* ¶ 37.)

The Court finds that Plaintiff's was afforded more than sufficient pre-termination due process.  It is clear from the undisputed facts that Plaintiff's pre-termination satisfied the three requirements under *Gilbert*, discussed above: (1) Plaintiff was provided oral and written notice of the issues the College had with his performance; (2) the College provided an explanation of the evidence against Plaintiff; and (3) and the College provided Plaintiff with an opportunity to present his side of the story.  *Gilbert*, 520 U.S. at 929.  Not only did Plaintiff have the *opportunity to* explain his side of the story (ECF No. 95 ¶ 12), but he *actually did* explain his side of the story by submitting numerous documents that he believed showed that he was a competent teacher (*id.* ¶¶ 12, 17).

Plaintiff argues that the Performance Plan was not pre-termination process because he was only told he *might* be terminated if he failed to complete it.  (ECF No. 124 at 18.)  He cites no case law to support this argument.  To the contrary, the Tenth Circuit has held that adequate pre-termination process only requires that an employee

11

be informed that his "job [is] in jeopardy." *West v. Grand Cnty.*, 967 F.2d 362, 368 (10th Cir. 1992); *see also Benavidez v. City of Albuquerque*, 101 F.3d 620, 623 (10th Cir. 1996) (pre-termination process adequate even though plaintiff only told that they "could face disciplinary action, including termination."). Here, the language of the Performance Plan and Plaintiff's conversations with supervisors unambiguously informed him that he might be terminated if he failed to improve his performance. Therefore, Plaintiff's argument is unpersuasive.

For the reasons discussed above, the Court finds that there is no genuine dispute as to any material fact and, as a matter of law, the College provided Plaintiff constitutionally sufficient pre-termination due process.

**B.     Post-termination Due Process**

"Because the post-termination hearing is where the definitive fact-finding occurs, there is an obvious need for more formal due process protections at that point." *Powell v. Mikulecky*, 891 F.2d 1454, 1458 (10th Cir. 1989). However, the Court "must evaluate the constitutionality of post-termination process in light of the pre-termination procedures it follows." *Benavidez*, 101 F.3d at 626. When an employee has had a meaningful opportunity to explain his position and challenge his dismissal in pre-termination proceedings, the importance of the procedures in the post-termination hearing is not as great. *Id*. Due Process protects employees from wrongful or erroneous terminations and is not intended to create such an administrative burden that it thwarts the removal of unsatisfactory employees. *Loudermill,* 470 U.S. at 542–43.

In this case, the College provided extensive pre-termination process, as discussed above. Then, when Plaintiff was terminated, the College provided review procedures to challenge the decision. Plaintiff invoked these procedures, and the

Committee held a hearing.  It is undisputed that the hearing was an adversarial proceeding at which Plaintiff was represented by counsel and had an opportunity to counter the College's presentation with his own testimony and evidence.  In addition to the hearing, the Committee met two additional times to review documents submitted by the College and the Plaintiff.  Defendant argues that, as a matter of law, the process that afforded Plaintiff was adequate.  (ECF No. 95 at 25–29.)

Plaintiff argues that summary judgment is not warranted because there is a genuine dispute regarding whether he was allowed to cross-examine the College's witnesses and call his own witnesses.  (ECF No. 124 at 19.)  However, the record does not support his argument.  First, regarding cross-examination, it is undisputed that Defendants Gifford and Gianneschi attended the hearing and testified about the basis of the College's decision, and Plaintiff could have questioned them but chose not to.  (ECF No. 124 at 19.)  Second, regarding witnesses, there is no evidence in the record that Plaintiff attempted to call a witness or that he was forbidden from doing so.  Therefore, the Court finds that Plaintiff has failed to show that there is a genuine factual dispute preventing judgment as a matter of law.  *See West*, 967 F.2d at 368–369 ([T]the employee was not entitled to an opportunity to confront her accusers or to challenge their evidence, because she made no attempt to require attendance of the witnesses against her.")

Plaintiff also argues that summary judgment is inappropriate because of the College's failure to provide notice of non-renewal within 60 days of the end of Plaintiff's employment, as required by Policy 6.26.  (ECF No. 124 at 16.)  However, claims of lack of "due process under the Constitution are evaluated against basic federal constitutional

13

standards," not by institutional policies and procedures. *See Rector v. City & Cnty. of Denver,* 348 F.3d 935, 947 (10th Cir.2003). "A failure to comply with state or local procedural requirements does not necessarily constitute a denial of due process; the alleged violation must result in a procedure which itself falls short of standards derived from the Due Process Clause." *Hicks v. City of Watonga,* 942 F.2d 737, 746 n.4 (10th Cir.1991) (citations omitted). Here, the Plaintiff does not explain how the College's failure to comply with its 60-day notification policy caused the procedure to fall short of due process standards. While it is possible that the late notification is material to Plaintiff's breach of contract claim, the Court finds that it does not implicate the Plaintiff's due process rights, which do not necessarily include a minimum notification period.

For the reasons discussed above, the Court finds that there is no genuine dispute as to any material fact and, as a matter of law, the College provided Plaintiff constitutionally sufficient post-termination due process. Therefore, the Court grants summary judgement against Plaintiff and in favor of Defendants on Plaintiff's § 1983 claim for violation of his due process rights.

## IV. STATE CLAIMS

The Court has an independent duty to examine its jurisdiction at every stage of the litigation. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Because the Court had original jurisdiction over Plaintiff's Title VII claims, it had supplemental jurisdiction over the remaining state law claims as well. 28 U.S.C. § 1367.

This case is now in a fundamentally altered procedural posture given that the Court is herein granting summary judgment to Defendants on all of Plaintiff's federal law claims. Plaintiff's remaining claims are all grounded in state law. A federal court does

not have independent jurisdiction over state law claims unless those state law claims "turn on substantial questions of federal law." *Grable & Sons Metal Prods., Inc. v. Darue*, 545 U.S. 308, 312 (2005). None of the state law claims at issue in this case turn on questions of federal law.

Federal supplemental subject matter jurisdiction over state law claims "is extended at the discretion of the court and is not a plaintiff's right." *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). "[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon Univ.*, 484 U.S. at 350. In the interest of comity and federalism, district courts are advised against making "needless decisions of state law." *TV Commc'ns Network, Inc.*, 964 F.2d at 1028. If federal claims are dismissed before trial, leaving only issues of state law, the federal district court should ordinarily decline to exercise supplemental jurisdiction by dismissing the case without prejudice. *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) (citing *Carnegie-Mellon Univ.*, 484 U.S. at 350).

The instant suit is not yet at the trial stage, so issues of judicial economy and fairness are not implicated here. *See Carnegie-Mellon Univ.*, 484 U.S. at 350. Rather, the issues of comity and federalism are at the forefront because the Court would have to decide matters of state law if it continued to exercise jurisdiction over Plaintiff's remaining claims. *See McWilliams v. Jefferson Cnty.*, 463 F.3d 1113, 1117 (10th Cir.

2006). "Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Thatcher Enters. v. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990). The remaining causes of action either arise out of Colorado statutes, or are grounded in Colorado common law; no federal laws are implicated by these claims. Thus, there is not a compelling reason to maintain jurisdiction over this suit.

The Court finds that the remaining claims would be better addressed in state court. *See Gaenzle*, 614 F.3d at 1229; *TV Commc'ns Network, Inc.*, 964 F.2d at 1028; *Thatcher Enters.*, 902 F.2d at 1478. Accordingly, the Court declines to continue to exercise its supplemental jurisdiction over the remaining claims.

## V. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. Defendants Motion for Summary Judgment (ECF No. 95) is GRANTED IN PART AND DENIED IN PART:
   a. Defendants' Motion for Summary Judgment as to Plaintiff's § 1983 claim for violation of his due process rights is GRANTED;
   b. The remaining portions of Defendants' Motion for Summary Judgment are DENIED AS MOOT;
2. The Court DECLINES to continue to exercise its supplemental jurisdiction over Plaintiff's remaining state law claims; thus, all such claims DISMISSED WITHOUT PREJUDICE;

3. The Clerk shall enter judgment in favor of Defendants, and against Plaintiff on Plaintiff's § 1983 claim against Defendants for violation of his due process rights, and the Clerk shall terminate this case; and

4. Defendant shall have its costs, upon compliance with D.C.COLO.LCivR 54.1.

Dated this 2nd day of August, 2022.

BY THE COURT:

_____
William J. Martinez
United States District Judge